**IN THE UNITED STATES COURT**
**FOR THE NORTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ELIZA REID and TRACY WATERS, on behalf of themselves and all others similarly situated,<br><br>        Plaintiffs,<br><br>               v.<br><br>GMC SKIN CARE USA INC. d/b/a G.M. COLLIN,<br><br>        Defendant. | Civ. Action No.  8:15-cv-277 (BKS/CFH)<br><br><br>CLASS ACTION COMPLAINT<br><br><br><u>DEMAND FOR JURY TRIAL</u> |

Plaintiffs Eliza Reid and Tracy Waters ("Plaintiffs"), on behalf of themselves and all others similarly situated, alleges against GMC Skin Care USA, Inc. d/b/a G.M. Collin ("G.M. Collin" or "Defendant") the following upon their own knowledge, or where they lack personal knowledge, upon information and belief including the investigation of their counsel.

<u>**NATURE OF ACTION**</u>

1.       This is a class action against G.M. Collin arising out of the marketing and sale of its "Phyto Stem Cell+," line of anti-aging skin care products, including Phyto Stem Cell+: Serum; Cream; Gel-Cream; Eye Contour; and Mask (collectively "the Stem Cell Products" or "Products").

2.       Through an extensive, widespread, comprehensive and uniform nationwide marketing campaign, Defendant markets the Stem Cell Products as revolutionary and/or advanced anti-aging skincare products that purportedly stimulate collagen synthesis, regulates the activity and vitality of the epidermal stem cells and genes, promotes skin cell survival and longevity, and improves cellular metabolism.  Furthermore, using the Stem Cell Products, results in a "DNA repair effect," "revers[ing] the signs of aging."

3.     Defendant's representations, however, are false and misleading.  The Mislabeled Stem Cell Products will not rebuild collagen, promotes skin cell survival and longevity or repair DNA, and will not provide consumers with anti-aging results including reduced lines and wrinkles, improved skin elasticity and resilience, and firmer younger looking skin.  Rather, the plant cell extracts found in cosmetics, such as the Stem Cell Products, cannot survive in active form long-term and therefore cannot provide the therapeutic anti-aging effects.  Moreover, as described herein, no ingredient found in the Stem Cell Products is capable of repairing the skin's DNA from past damage.   Thus, Defendant's "stem cell" claims are patently false and Defendant's claims of increased cellular longevity are misleading to consumers.

4.     Additionally, the Stem Cell Products are misbranded under the Food Drug and Cosmetics Act and its implementing regulations because G.M. Collin does not adequately disclose what the active ingredients are in the Stem Cell Products.  Defendant's lack of disclosure is further misleading to consumers and if consumers were aware that the Products were misbranded, they would not have purchased the Products.

5.     Defendant's hoax involves numerous false and misleading statements concerning its Stem Cell Products which have injured Plaintiffs and the Class by inducing them to purchase worthless and/or overpriced products.  G.M. Collin does so with one goal in mind — reaping enormous profits at the expense of consumers.  Defendant, however, should be held accountable and liable for its deceptive conduct in its marketing and sale of the Stem Cell Products

6.     Plaintiffs seek relief in this action individually, and as a class action on behalf of all persons in the United States who, within the relevant statute of limitations period, purchased the Stem Cell Products, for Defendant's violation of the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301, *et seq.*, for unjust enrichment, breach of express warranty, breach of implied

warranty of merchantability, and violations of various consumer protection statutes including, the California Consumer Legal Remedies Act ("CLRA"), Civil Code § 1750, *et seq.*, Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, *et seq.*, and the False Advertising Law ("FAL"), Bus. & Prof. Code § 17500, *et seq.*, the Washington Consumer Protection Act, RCW 19.86 *et seq,.* and the consumer fraud laws of the various states.

## THE PARTIES

7.    Plaintiff Tracy Waters is a resident of Tacoma, Washington.  Plaintiff Waters purchased G.M. Collin's Phyto Stem Cell+ Eye Contour Cream on Amazon.com in or around March of 2013 for approximately $65.00.  Plaintiff Waters purchased the Stem Cell Products in reliance on Defendant's misrepresentations, including those found on the product labeling and/or in various advertisements and promotional materials as described herein.  Plaintiff Waters paid a significant premium because of the false and misleading claims she relied upon.  Ultimately, the Stem Cell Product was worthless (and certainly worth less than its representations suggested), and Plaintiff Waters would not have purchased the Stem Cell Product if she had known that the claims on the label were false, misleading, and misbranded.

8.    Plaintiff Eliza Reid is a resident of Lancaster, California. Plaintiff Reid purchased G.M. Collin Phyto Stem Cell+ Eye Contour Cream from a Walgreens store in Lancaster, California in or around February of 2014 for approximately $50.00.  Plaintiff Reid purchased the Stem Cell Products in reliance on Defendant's misrepresentations, including those found on the product labeling and/or in various advertisements and promotional materials as described herein. Plaintiff Reid paid a significant premium because of the false and misleading claims she relied upon.   Ultimately, the Stem Cell Product was worthless (and certainly worth less than its representations suggested), and Plaintiff Reid would not have purchased the Stem Cell Product if

she had known that the claims on the label were false, misleading, and misbranded.

9.     Defendant GMC Skin Care USA, Inc. is a Delaware corporation with its principal place of business located at, 613 State Route 3, Suite 100, Plattsburgh, NY 12901.  Defendant is registered to do business in the State of New York as entity number 3460972.  Defendant manufactures markets and sells a variety of skin care products, including the Stem Cell Products throughout the United States.  The Company bills itself as "an unequivocal leader in innovative skin care solutions by continually offering the highest quality, clinically proven, scientifically advanced preparations in both our unique, cost effective, pre-dosed clinical formulations."  Moreover, according to the Company's website "[a] team of highly skilled scientists and professionals develop all our formulas internally, selecting only ingredients that have been proven safe and effective, and using them in optimal doses for the aesthetic conditions they are to treat." [1]

## JURISDICTION AND VENUE

10.     This Court has original jurisdiction pursuant to 28 U.S.C. §1332(d)(2), as amended by the Class Action Fairness Act of 2005, because the matter in controversy, exclusive of interest and costs, exceeds the sum or value of $5,000,000, and is a class action where Plaintiffs and Class Members are from a different state than Defendant.  Further, at least two thirds of the members of the class are citizens of a state different from Defendant.  This Court has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.     This Court also has diversity jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because Plaintiff Reid is a resident of the state of California, Plaintiff Waters is a resident of the state of Washington, Defendant is a resident of the state of New York, and the amount in

---

[1] www.gmcollin.com/pdf/GMC-Portfolio.pdf.

controversy exceeds the sum or value of $75,000, exclusive of interests and costs.

12.     In addition, this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because Plaintiffs are alleging that Defendant has violated the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 et seq.

13.     Personal jurisdiction is derived from the fact that Defendant systematically and continuously conducts business within the state of New York and maintains its headquarters and principal place of business within the state of New York.

14.     Venue is proper in this Court pursuant to 28 U.S.C. §1391(b) and (c) because a substantial part of the events and acts giving rise to the claims herein occurred in this District and Defendant principal place of business is located within this judicial district.

## FACTS

**A.     The Anti-Aging Products Marketplace**

15.     The US anti-aging skincare market has consistently exceeded $2 billion dollars in recent years.[2]  Recent market research[3] has found that American women lead the way in anti-aging facial skincare usage when compared to their counterparts in Germany, France and the UK.  The US, UK and France launched the most anti-aging skincare products between 2009 and 2011 compared to eastern countries Japan and China.  37% of US women have used ant-aging creams and serums, compared to 23% of UK women, 24% women in France, 25% of women in Germany, and 26% of women in Spain.

16.     The anti-aging market for products beyond just skincare is far bigger and also growing at a rapid rate.  "The market research firm, Global Industry Analysts, projects that a

---

[2] http://www.statista.com/statistics/312336/us-anti-aging-skin-care-sales/.
[3] *See American Women Most Likely to Use Anti-Aging Face Creams, the West Leads in NPD*, Mintel (Jun. 15, 2012), http://www.mintel.com/press-centre/press-releases/884/american-women-most-likely-to-use-anti-aging-face-creams-the-west-leads-in-npd.

boomer-fueled consumer base, 'seeking to keep the dreaded signs of aging at bay,' will push the U.S. market for anti-aging products from about $80 billion now to more than $114 billion by 2015."[4]

17.     Anti-aging skincare is one of the industry's booming sectors.  Wrinkle creams and facial serums are top sellers.  The market for cosmetics with medicine-based ingredients – or "cosmeceuticals" - is estimated to be approaching $20 billion[5].

18.     There are two types of aging in the skin: intrinsic or chronologic aging, and extrinsic or environmental aging.  In intrinsic aging, free radicals are formed naturally through normal metabolism.  With intrinsic aging, cellular mechanisms become less efficient resulting in fine wrinkles and a relaxed appearance.  In extrinsic aging, the skin suffers additional free radical damage from exogenous factors such as UV exposure, cigarette smoking and air pollution. These environmental stressors not only accelerate skin aging, but are distinctly responsible for skin damage not present in chronological aging alone, leading to deep wrinkles, hyper-pigmentation, chronic inflammation, abnormal elastin formation, and cancer.[6]

19.     Consumer Reports recently tested a number of anti-aging skincare products and their tests showed "inflated claims and limited results."  Consumer Reports tested nine anti-aging face serums, all available at drug stores for prices ranging from $20 to $65 and all claiming to reduce wrinkles.  "After six weeks of use, the effectiveness of even the best products was limited and varied from subject to subject," according to the review.  When the tests did show wrinkle

---

[4] *See Boomers Will Be Pumping Billions Into Anti-Aging Industry*, Huffington Post (Aug. 8, 2011), http://www.huffingtonpost.com/2011/08/20/boomers-anti-aging-industry_n_932109.html.
[5] *Id.*
[6] *See* R.M. Lavker, *Cutaneous aging: Chronologic versus photoaging*, 1 In B. Gilchrest (Ed.) Photodamage, 123-135 (1995); *see also* S. Bosset et al., *Photoageing shows histological features of chronic skin inflammation without clinical and molecular abnormalities*, 149 Brit J Derm. 826-835 (2003).

6

reductions, "they were at best slight, and they fell short of the miracles that manufacturers seemed to imply on product labels."[7]  Consumer Reports also tested anti-aging wrinkle creams and also found that these products do not live up to their claims.  The magazine tested seven wrinkle-cream products and one control product, finding that "[a]t best the products had a small effect, and not on everyone."[8]

20.     The National Institute on Aging correctly advises that consumers should be skeptical and on guard for possible scams involving purported anti-aging products.  "Our culture places great value on staying young, but aging is normal.  Despite claims about pills or treatments that lead to endless youth, no treatments have been proven to slow or reverse the aging process."[9]

**B.     Defendant Capitalizes On The Booming Anti-Aging Products Market**

21.     To capitalize on this booming anti-aging product market and distinguish its products from the deluge of other skin care products available to consumers, Defendant has embarked on a massive misleading marketing campaign designed to convince consumers that its products offer  astounding, often immediate anti-aging results, backed by extensive scientific research and clinical testing.

22.     As a result, Defendant is able to induce consumers to pay exorbitant prices for the Stem Cell Products.  The Stem Cell Products retail from approximately $50.00 to $136.00 per unit.

---

[7]  *See Anti-wrinkle face serums*, Consumer Reports Magazine: May 2010 (May 2010), http://www.consumerreports.org/cro/magazine-archive/2010/may/health/wrinkle-serum/overview/wrinkle-serum-ov.htm?loginMethod=auto >.

[8]  *See    Wrinkle    Cream    Buying    Guide*,    Consumer    Reports    (Apr.    2012), http://www.consumerreports.org/health/healthy-living/beauty-personal-care/wrinkle-products/wrinkle-creams/index.htm.

[9]  *See Beware of Health Scams*, National Institute on Aging (Sept. 2008), http://www.nia.nih.gov/health/publication/beware-health-scams.

23.     G.M. Collin's Stem Cell Product line can be purchased by consumers through boutique retailers, drugstores such as Walgreens, specialty health and beauty salons, and through major online retailers such as Amazon.com.[10]

**C.     Defendant's False And Misleading Marketing Of The Stem Cell Products**

24.     Defendant has engaged in a uniform marketing and advertising campaign designed to convince consumers that its Stem Cell Products (which feature plant stem cells) are scientifically and clinically proven to provide consumers with dramatic anti-aging results, including improving the appearance of fine lines and wrinkles and improved skin elasticity and firmness.  Moreover, the Stem Cell Products purportedly stimulate collagen synthesis, regulate the activity and vitality of the epidermal stem cells and genes, promotes skin cell survival and longevity, and improves cellular metabolism, resulting in DNA repair effect and "reverse the aging process."

25.     These false and misleading statements were disseminated in advertising, marketing, and promotional materials designed to induce consumers to purchase Stem Cell Products through the internet, through sales representatives, and at various stores.

26.     Indeed, on G.M. Collin's website, www.gmcollin.com, Defendant makes numerous anti-aging claims, purportedly backed by exhaustive scientific research including claims that Stem Cell Products will stimulate collagen synthesis, regulate the activity and vitality of the epidermal stem cells and genes, promotes skin cell survival and longevity, and improves cellular metabolism.  For example, on the webpages for the Stem Cell Products, G.M. Collin represents that:

---

[10] While G.M. Collins claims on its website it does not sell its products online, it nonetheless offers its products for sale through Amazon.com.  *See e.g., http://www.amazon.com/Collin-Phyto-Contour-Cream-Fluid/dp/B004BG7QTW/ref=sr_1_2?m=ATVPDKIKX0DER&s=beauty&ie=UTF8&qid=1423761285&sr=1-2.*

This advanced anti-aging skin care collection with PLANT STEM CELLS, specifically formulated to suit the needs of all skin types, improves the appearance of fine lines and wrinkles, visibly enhances skin elasticity and provides a rejuvenating effect to the skin.

http://www.gmcollin.com/pdf/GMC-Portfolio.pdf

27.     Furthermore, Defendant claims in various marketing materials that the Stem Cell Products can each provide drastic "Wrinkle Reduction" and dramatic improvements in skin firmness and skin elasticity:









http://www.gmcollin.com/images/intro/StemCellEN.pdf

28.     Defendant also represents combining the Stem Cell Products will provide "exceptional results," leading to a reduction of the number of wrinkles up to 97%.



11

*Id.*

29.     In addition to Defendant's claim that plant stem cells are capable of preventing the signs of aging, Stem Cell Product line also employs a design of intertwined double-stranded molecules, which is immediately recognizable as the "double helix" design of DNA.   The marketing and packaging of Stem Cell Products also prominently displays the phrases "Cellular Anti-Aging Skin Care" and "Phyto Stem Cell+," all designed to capitalize on the growing interest in stem cell research:



30.     This message is repeated in in various advertisements.  For example, Defendant touts "Telomere (DNA) Protection & Cellular Longevity" for the entire Stem Cell Product collection:



http://www.gmcollin.com/pdf/GMC-Portfolio.pdf

31.     Defendant also prominently features the double helix design alongside the claims that Stem Cell Products will "Reverse the Signs of Aging," and "help **reverse the aging process**":



www.gmcollin.com/images/intro/StemCellEN.pdf

32.     Additionally, the packaging and marketing materials of the Stem Cell Product line say that the Products can "delay the signs of aging" and that "the alliance of 3 powerful innovative sciences gives birth to a unique product collection which promotes the cellular vitality of the skin and helps delay the visible signs of aging."  Specifically, Defendant claims on the Product packaging and on its website that the Stem Cell Products have three key ingredients that can fight the signs of aging: 1.) Plant Stem Cells, 2.) DNA repair with Renovage®, and 3.) Cell Longevity with Orsirtine.  The purported "plant stem cells" in the Stem Cell Products are a "Malus Domestica Fruit Cell Culture Extract" that Defendant claims "increases longevity of skin stem cells" and "protects and maintains the function of skin stem cells."

14

33.     Defendant further states on the Products' packaging and its marketing materials that "As we age, the epidermal stem cells responsible for the formation of new healthy skin cells are significantly reduced and their action becomes less efficient" and that "Plant stem cells regulate the activity and vitality of the epidermal stem cells and genes, resulting in increased skin cell longevity and formation."



http://www.gmcollin.com/images/intro/StemCellEN.pdf.

34. Moreover, Defendant states on the Products' packaging that "The irregularities on the surface of the skin are the result of an accumulation of DNA damage" and that "over time, this damage is less effectively repaired and the DNA protection by the skin's normal mechanisms is reduced." Defendant also claims in its marketing material that "Renovage prolongs the skin cell and tissue life span, and improves cellular metabolism, resulting in a DNA repair effect." A copy of the product packaging Stem Cell Products Eye Contour Cream featuring these misrepresentations is provided below:



35.     Similarly, the product packaging of Stem Cell Products Cream states the product will "improve skin elasticity," "stimulates collagen synthesis to reduce the appearance of fine line and wrinkles,"  "regulates the activity and vitality of the epidermal stem cells," "promotes skin cell survival and longevity," and improves cellular metabolism resulting in a DNA repair effect."   A copy of the product packaging featuring these misrepresentations is provided below:



36.     To bolster these claims, G.M. Collin's utilizes various marketing and advertising to suggest that its Stem Cell Products are backed by legitimate and vigorous scientific research. For example, Defendant claims that the Stem Cell Products are the result of the "[t]he alliance of 3 innovative sciences, 1 Nobel Prize winning discovery in medicine, 7 international patents and 5 years of R&D."

37.     Additionally, on the "About Us" section of its website, G.M. Collin displays images of scientists in lab coats, and touts that "A team of highly skilled scientists and professionals develop all our formulas internally, selecting only ingredients that have been proven safe and effective…"[11]

**R&D: OUR COMMITMENT TO QUALITY, PERFORMANCE, SAFETY AND EXCELLENCE**

At G.M. Collin, we abide by the strictest manufacturing regulations - ones that comply with current pharmaceutical standards. All of our products are manufactured in accordance with the standards set by Health Canada and the FDA in the United States. A team of highly skilled scientists and professionals develop all our formulas internally, selecting only ingredients that have been proven safe and effective, and using them in optimal doses for the aesthetic conditions they are to treat.



**WHERE NATURE MEETS TECHNOLOGY**



At G.M. Collin, products are developed with one goal in mind: To offer high tech skin care solutions, which are deeply rooted in the brilliance of nature. Beauty reborn is about recapturing your true, natural radiance with the help of modern technology.

G.M. Collin products are derived from natural plant and marine extracts and are technologically developed to achieve visible results. While our laboratory uses the highest scientific standards, our philosophy of respect for the environment mandates that our products are not tested on animals. This balanced commitment to good science is the cornerstone of all our product development. While our ultimate goal is to offer the best skin care products on the market today, the true spirit of G.M. Collin is to help women and men look great while feeling good about how they achieved the results.

38.     Similarly, Defendant touts in its brochures that it maintains "Excellence In R&D" and "a state of the art clinical evaluation department."  Specifically:

> G.M. Collin sets itself apart as a leader in professional skin care with its very own state of the art clinical evaluation department. Throughout the entire development process, our clinical evaluation department submits several preparations for exhaustive testing involving qualitative evaluations using the most sophisticated

---

[11] http://www.gmcollin.com/en/aboutUs_noJS.php#r&d.

instruments. Our clinical evaluation department has a bank of over 1000 volunteers of all ages, skin types and skin conditions, available to participate to the various qualitative and quantitative studies. A new product is launched only under the condition that the highest quality of results have been achieved.

http://www.gmcollin.com/pdf/GMC-Portfolio.pdf.

### D.   Plant Stem Cells Cannot Reduce Or Prevent Signs Of Aging

39.   Each of G.M. Collins anti-aging claims, however, is false and misleading.  As noted by S. Jay Olshansky, a distinguished professor at the University of Illinois-Chicago's School of Public Health who has written extensively about aging, "If someone is promising you today that you can slow, stop or reverse aging, they're likely trying hard to separate you from your money."[12]

40.   The idea behind stem cell therapy is that living stem cells can help rebuild and repair human organs.  Stem cells are living undifferentiated biological cells that can become specialized cells in human organs and, in turn, divide and produce more healthy specialized cells.  Like human stem cells, living plant stem cells have the ability to self-renew and replace specific cells in plants that are in need of repair.  However, living plant stem cells are not found in beauty products and even if they were, they would not have the capability to differentiate into specialized human skin cells.

41.   Paolo U. Giacomoni, who was formerly the executive director of research at Estee Lauder, and who received a Laurea in Atomic Physics from the University of Milan and a Ph.D. in Biochemistry from the University of Paris, is critical of the role of stem cells in cosmetics. "Stem cell technology is still far from biomedical applications, let alone cosmetic ones," states

---

[12]   *See*  http://www.huffingtonpost.com/2011/08/20/boomers-anti-aging-industry_n_932109.html (last accessed November 12, 2012).

Giacomoni.[13]

42.     The Stem Cell Products do not actually contain any living plant stem cells among its ingredients, but rather the Products contain the ingredient "Malus Domestica Fruit Cell Culture" which contains deceased plant stem cells.  Stem cell culture is a delicate process requiring temperature-controlled incubators and a constant supply of growth factors presented to the cells in specially-formulated sterile media.  Stem cells die quickly after removal from such sterile conditions.  After cell death, the cells are quickly broken down by enzymatic, chemical and bacterial means.  To assert that any cosmetic product could contain anything resembling a stem cell after undergoing the manufacturing process that adds dozens of additional herbal and chemical components is a patently absurd falsehood that seeks to prey on the average consumer's ignorance of cell biology.

43.     Moreover, plant stem cell extracts are unable to reverse the signs of aging as Defendant claims.  Rather, Plant stem cell extracts don't likely interact with human stem cells at all.  Jörg Gerlach, M.D., Ph.D., Professor of surgery at the University of Pittsburgh has stated that "Stem cells need specific nutrition via blood supply in the tissue to survive and function — if they were layered onto intact skin the stem cell would just die."[14]  That conclusion has been echoed by other leading experts in the fields of medicine and biology.  For example, a leading Professor of Botany at Oxford University was quoted by *The Daily Mail* saying, "I don't see how

---

[13] http://www.ncbi.nlm.nih.gov/pmc/articles/PMC2581859/.

[14] *See* Brooke Borel, *Stem Cell Skincare: Fact or Fiction? A growing list of beauty creams boast they can reverse wrinkles and defy age with the help of stem cells, but none have the science to back up the claims*, YOU BEAUTY, Oct. 17, 2011, *available at* http://www.youbeauty.com/skin/stem-cells-skincare.

plant stem could interact with human stem cells in this way."[15]  Even some leading proponents of plant stem cells admit that anti-aging benefits to the skin after topical application of plant stem cells "could not be confirmed in a clinical trial."[16]  Likewise, Dr. Waleed Ezzat, MD, a facial reconstructive surgeon at the Boston Medical Center was quoted by *Boston Magazine* saying, "The bottom line is that there is no conclusive scientific data that absorbing stem cell extracts from a cream can really reverse the aging process. My advice is that a good cream is a good cream. But if the advertising seems to [*sic*] good to be true, it most likely is.  Buyer beware."[17]

44.    G.M. Collin misleads consumers by explicitly and implicitly representing that plant stem cells in the Stem Cell Products can help prevent the signs of aging.  However, Plant Stem cells cannot reverse or prevent the signs of aging as Defendant suggests because it is scientifically impossible for plant stem cells to interact with human skin cells in a way that would reduce the effects of aging.  If reasonable consumers would have known the truth about the efficacy of stem cells in the Products, then they would not have purchased the Products.

**E.    The Stem Cell Products Cannot Repair DNA**

45.    Defendant claims that the Renovage, an ingredient in its Stem Cell Products, has a "DNA repair effect."  Renovage is a skin care solution that is manufactured by Sederma, which is a leading manufacturer of cosmetic bulk ingredients.[18]

46.    Defendant misleads reasonable consumers into believing that the Renovage

---

[15] *See* Leah Hardy, *Could the extract form a rare swiss apple REALLY get rid of your wrinkles?*, DAILY MAIL, Nov. 30, 2009, *available at* http://www.dailymail.co.uk/femail/article-1231889/Could-extract-rare-Swiss-apple-REALLY-rid-wrinkles.html.

[16] *Id.*

[17] *Ask a Doctor: Do Stem Cell Face Creams Really Work? A facial plastic surgeon tells us the truth behind the stem cell face cream marketing hype*, BOSTON MAGAZINE, Jan. 8, 2013, *available at* http://www.bostonmagazine.com/health/blog/2013/01/08/stem-cell-face-creams/.

[18]    http://www.sederma.com/home.aspx?view=dtl&d=content&s=111&r=178&p=1138&prodID=97.

ingredient is capable of repairing the skin's DNA.  However, neither Renovage nor any other ingredient is capable of repairing DNA.  This is because DNA damage sustained via direct or indirect injury cannot be repaired by antioxidants or topically applied enzymes such as those found in beauty products.

47.     The only way to repair skin DNA is through endogenous enzymatic repair mechanisms that are naturally triggered by the cells themselves when DNA damage occurs.[19] Although antioxidants, enzymes, and other ingredients in beauty products may prevent future DNA damage by protecting the skin from environmental stressors such as UVA rays, there is no possible way that any ingredient applied to the skin can repair past DNA damage as Defendant claims. Leonard Guarente, Ph.D, a MIT biologist and genetic researcher, has stated that "No known substance can cause genes to repair themselves."[20]An article in *The Daily Mail* notes that "Some skincare products make extravagant claims to be able to repair your DNA via creams that contain the same enzymes that the body produces, but many experts are skeptical."[21]

**F.     The Stem Cell Products Are Misbranded Under California Law**

**1.     The Federal Food, Drug, and Cosmetic Act**

48.     California's counterpart to the FDCA, known as the Sherman Law, incorporates the FDCA's drug regulations. Cal. Health & Safety Code §§ 109925, 110110, 111550. Further, the Sherman Law provides that "[a]ny drug or device is misbranded if its labeling is false or

---

[19] *See generally* Suzanne Clancy, *DNA Damage & Repair: Mechanisms for Maintaining DNA Integrity, Nature Education* (2008), *available at*   http://www.nature.com/scitable/topicpage/dna-damage-repair-mechanisms-for-maintaining-dna-344 (last visited Feb. 19, 2015)..

[20] *DNA repair is the new anti-aging frontier*, 2009 Rodman Publishing, *available at* http://www.thefreelibrary.com/DNA+repair+is+the+new+anti-aging+frontier.-a0202253483 (last visited Feb. 19, 2015).

[21] Claire Coleman, *Overdone the sun? Our after-summer rescue plan will repair most the damage- and leave your skin with a healthy glow,* The Daily Mail (Sept. 13, 2014), *available at* http://www.dailymail.co.uk/health/article-2754636/Overdone-sun-Our-summer-rescue-plan-repair-damage-leave-skin-healthy-glow.html (last visited Feb. 19, 2015).

misleading in any particular." *Id.* § 111330.

49.     The FDCA, 21 U.S.C. §§ 301 *et seq.*, governs the sale of foods, drugs, and cosmetics in the United States. The classification of a product as a food, drug, or cosmetic, affects the regulations by which the product must abide. In general, a product is characterized according to its intended use, which may be established, among other ways, by: (a) claims stated on the product's labeling, in advertising, on the Internet, or in other promotional materials; (b) consumer perception established through the product's reputation, for example by asking why the consumer is buying it and what the consumer expects it to do; or (c) the inclusion of ingredients well-known to have therapeutic use, for example fluoride in toothpaste.[22]

50.     The FDCA defines <u>drugs</u>, in part, by their intended use, as "articles intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease," or "articles (other than food) intended to affect the structure or function of the body of man or other animals," 21 U.S.C. § 321(g)(1).

51.     The FDCA defines <u>cosmetics</u> by their intended use, as "articles intended to be rubbed, poured, sprinkled, or sprayed on, introduced into, or otherwise applied to the human

---

[22]     http://www.fda.gov/cosmetics/guidancecomplianceregulatoryinformation/ucm074201.htm *see also* 21 C.F.R. § 201.128.

> The words *intended uses* or words of similar import . . . refer to the objective intent of the persons legally responsible for the labeling of drugs. The intent is determined by such persons' expressions or may be shown by the circumstances surrounding the distribution of the article. This objective intent may, for example, be shown by labeling claims, advertising matter, or oral or written statements by such persons or their representatives. . . . But if a manufacturer knows, or has knowledge of facts that would give him notice, that a drug introduced into interstate commerce by him is to be used for conditions, purposes, or uses other than the ones for which he offers it, he is required to provide adequate labeling for such a drug which accords with such other uses to which the article is to be put.)

body . . . for cleansing, beautifying, promoting attractiveness, or altering appearance," 21 U.S.C. § 321(i)(1).

52.    The FDA has explained that "[s]ome products meet the definitions of both cosmetics and drugs," for example, "when a product has two intended uses" as with an anti-dandruff shampoo," which "is a cosmetic because its intended use is to cleanse the hair," and also "is a drug because its intended use is to treat dandruff. . . . Such products must comply with the requirements for both cosmetics and drugs." [23]

53.    The FDA has further explained that "[f]irms sometimes violate the law by marketing a cosmetic with a drug claim or by marketing a drug as if it were a cosmetic, without adhering to requirements for drugs."[24]

### 2.    The Stem Cell Products are Both Cosmetics and Drugs

54.    G.M. Collin markets the Stem Cell Products as cosmetics.  But the Stem Cell Products are also drugs because an intended use of the products, as repeatedly demonstrated throughout G.M. Collin's packaging, advertising, and marketing materials, is to affect the structure and function of the human body, specifically, DNA within human skin.  Accordingly, the product is promoted for uses that cause it to be a drug under 21 U.S.C. § 321(g)(1), including through statements similar to those the FDA has found render other, similar products to be considered drugs under the Act.[25]

55.    Specifically, the following G.M. Collin representations expressly set forth therapeutic uses or purposes for the Stem Cell Products, rendering them drugs under the FDCA:

---

[23] *Id.*

[24] *Id.*

[25] *See*, *e.g.*, Oct. 9, 2008 FDA Warning Letter to Natural Biology, Inc., *available at* http://www.fda.gov/iceci/enforcementactions/warningletters/2008/ucm1048101.htm   (finding product to be promoted as a drug in part based on representation that it "provid[es] greater protection against DNA damage than vitamins C, E, or beta-carotene.").

a)      "Promotes vitality of the skin."

b)      "Improves the overall appearance of the eye area"

c)      "Improves the firmness of the skin and the appearance of dark circles, puffiness, wrinkles, and fine lines"

d)      "Cellular Anti-Aging Skin Care"

e)      "This advanced anti-aging serum harnesses free radicals, brightens the complexion, softens and smoothes the skin's texture" and "visibly improves the overall appearance of fine lines and wrinkles, as well as the firmness of the skin."

f)      "Improves the appearance of fine lines and wrinkles"

g)      "Targets protection, prevention and regeneration of skin damage to delay the visible signs of aging"

h)      "Regulates the activity of the genes and the function of the cell to increase cells longevity."

**3.      The Stem Cell Products are Misbranded Because their Labels Violate FDCA Regulations for Over-the-Counter (OTC) Drugs**

56.      Pursuant to 21 U.S.C. § 352(c), "[a] drug . . . shall be deemed to be misbranded . . . . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon . . . ."

57.       Drug labeling regulations appear in Part 201 of Title 21 of the Code of Federal Regulations.

58.      Pursuant to 21 U.S.C. § 352(c), "[a] drug . . . shall be deemed to be misbranded . . . . [u]nless its labeling bears (1) adequate directions for use . . . ."

59.      The Stem Cell Products are misbranded because they do not state the active drug ingredients as required by 21 C.F.R. § 201.66(c), which provides in part:

25

> The outside container or wrapper of the retail package . . . shall contain . . . . (2) "Active ingredient" or "Active ingredients" "(in each [insert the dosage unit stated in the directions for use (e.g., table, 5 mL teaspoonful) or in each gram as stated in 333.110 and 333.120 of this chapter])", followed by the established name of each active ingredient and the quantity of each active ingredient per dosage unit. Unless otherwise provided in an applicable OTC drug monograph or approved drug application, products marketed without discreet dosage units (e.g., topicals) shall state the proportion (rather than the quantity) of each active ingredient.

60.    Specifically, the Products do not contain an adequate "Active Ingredients" statement.

61.    Defendant thus also fails to disclose the proportion of these ingredients on the Products' label and packaging, in violation of 21 C.F.R. §§ 201.66(c)(2).

62.    21 C.F.R. § 201.66(d) provides the "Format requirements" for the disclosures required under 21 C.F.R. § 201.66(c)(2). Since Defendant fails to even make those required disclosures, it also violates 21 C.F.R. § 201.66(d).

63.    Accordingly, the Stem Cell Products are misbranded pursuant to 21 U.S.C. § 352(c) and 21 C.F.R. § 201.66.

64.    Defendant's failure to disclose the proportion of active ingredients in the Stem Cell Products misleadingly obscures from consumers the amounts or proportions contained in the products, which could therefore be miniscule.

65.    In addition, 21 C.F.R. § 201.5 sets forth the definition of "adequate directions for use" used in 21 U.S.C. § 352(f), and specific examples of inadequate directions. Since Defendant does not provide any adequate directions for use, it is misbranded pursuant to both 21 U.S.C. § 352(f) and 21 C.F.R. § 201.5.

**4.    The Stem Cell Products are Misbranded Because their Labels Violate FDCA Regulations for Cosmetics**

66.    Pursuant to 21 U.S.C. § 362(c), "[a] cosmetic shall be deemed to be misbranded .

. . . [i]f any word, statement, or other information required by or under authority of this chapter to appear on the label or labeling is not prominently placed thereon . . . ."

67.     Cosmetic labeling regulations appear in Part 701 of Title 21 of the Code of Federal Regulations.

68.     Pursuant to 21 C.F.R. § 701.3(d), because the Stem Cell Products are "cosmetic[s] [that are] also [ ] over-the-counter drug product[s]," they must "declare the active drug ingredients as set forth in 201.66(c)(2) and (d) of" title 21 of the Code of Federal Regulations.

69.     As alleged above, the Stem Cell Products fail to make the required statement of active ingredients under 21 C.F.R. § 201.66. Accordingly, the products are misbranded pursuant to 21 U.S.C. § 362(c) and 21 C.F.R. § 701.3.

**5.     The Stem Cell Products are Unapproved New Drugs**

70.     Placing an unapproved new drug into the stream of commerce is an independent wrongful act under the FDCA, different than misbranding. 21 U.S.C. § 355(a).

71.     Under the FDCA, drugs must either receive premarket approval by the FDA through a New Drug Application process, or conform to a monograph for a particular drug category, as established by the FDA's Over-the-Counter Drug Review. Such monographs specify conditions whereby OTC drug ingredients are generally recognized as safe and effective, and not misbranded.

72.     The FDA has not conducted a review of the Stem Cell Products and found them to be generally recognized as safe. Nor has the FDA concluded that at least some of its active ingredients are generally recognized as safe or effective.

73.     Because the Stem Cell Products are not generally recognized as safe and effective when used as labeled, they are new drugs as defined in 21 U.S.C. § 321(p).

74.     Such new drugs may not be lawfully marketed in the United States without prior approval from the FDA as described in 21 U.S.C. § 355(a), in the form of a New Drug Application approved.

75.     Defendant has filed no New Drug Application for the Stem Cell Products, nor has the FDA ever approved any such application for the products.

## G.     Defendant's False And Misleading Claims Are Material

76.     All of Defendant's false and/or misleading claims challenged herein relate to matters that are material and important to a consumer's purchasing decision, as they concern the effectiveness of the Stem Cell Products, the qualities and/or composition of the products and the reason for which they are sold.

77.     Defendant's uniform cellular anti-aging claims in its marketing and promotional materials are intended to, and did, induce Plaintiffs and members of the Class to rely upon those representations that Defendant's Stem Cell Products were effective and scientifically tested and/or proven to build collagen, regulates the activity and vitality of the epidermal stem cells and genes, promotes skin cell survival and longevity, and improves cellular metabolism, providing consumers with anti-aging results including reduced lines and wrinkles, improved skin elasticity and resilience, and firmer younger looking skin, and were effective for their intended use.  These representations were a substantial factor in causing Plaintiffs and members of the Class to purchase Defendant's Stem Cell Products.

78.     At the time members of the Class purchased the Stem Cell Products, they were unaware of the fact that the products are not proven effective for their intended use, nor are they generally recognized among qualified experts as effective, nor that plant cell extracts found in cosmetics, such as the Stem Cell Products, cannot survive in active form long-term and therefore

cannot provide the therapeutic anti-aging effects.

79.     If members of the Class had been aware of the true facts concerning the efficacy of the Stem Cell Products, they would not have purchased the products.

80.     Plaintiffs and members of the Class have been injured in fact and have suffered out of pocket losses.  Plaintiffs and members of the Class therefore seek a full refund and/or rescission of the transaction and all further equitable and injunctive relief as provided by applicable law.

81.     Plaintiffs also sustained legally cognizable injury in the form of lost money as a result of Defendant's misbranding, which also was in the nature of an omission, *i.e.*, Defendant's failure to adequately disclose the Stem Cell Products' active drug ingredients and their proportions, as well as the failure to provide adequate directions for use.  Had G.M. Collin labeled the Stem Cell Products in conformance with applicable FDCA and state law cosmetic and drug regulations, Plaintiffs would not have purchased them at all.

82.     Plaintiffs sustained legally cognizable injury in the form of lost money as a result of G.M. Collin's marketing the Stem Cell Products in a manner that causes them to be new drugs within the meaning of the FDCA.  Since manufactures may not lawfully market or sell *any* new drug, the Stem Cell Products would not have been available for sale to Plaintiffs if Defendant had acted lawfully.

## CLASS ACTION ALLEGATIONS

83.     Pursuant to Federal Rule of Civil Procedure 23, plaintiffs seek to represent a class of all persons in the United States who purchased during the applicable statute of limitations period one or more of the Stem Cell Products for personal, family, or household use, and not for resale.

84.     Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Reid further seeks to represent a subclass of all persons in California who purchased during the applicable statute of limitations period one or more of the Stem Cell Products for personal, family, or household use, and not for resale.

85.     In addition, Pursuant to Federal Rule of Civil Procedure 23, Plaintiff Waters seeks to represent a subclass of all persons in Washington who purchased during the applicable statute of limitations period one or more of the Stem Cell Products for personal, family, or household use, and not for resale.

86.     The members in the proposed class and subclass are so numerous that individual joinder of all members is impracticable, and the disposition of the claims of all class members in a single action will provide substantial benefits to the parties and Court.

87.     Questions of law and fact common to plaintiffs and the class include, but are not limited to the following:

     a.     Whether the Products contain active plant stem cells;

     b.     Whether the plant cell extracts in the Products directly interact with, stimulate, or otherwise affect the human skin's DNA;

     c.     Whether the Products directly interact with, stimulate, or otherwise affect the human skin's DNA;

     d.     Whether the Stem Cell Products' packaging or labels violate applicable FDCA and state law regulations relating to drugs and cosmetics;

     e.     Whether Defendant marketed and sold the Products as new drugs, in violation of applicable FDCA and state law statutory and regulatory provisions;

    f.      Whether Defendants labeling, marketing and promotion of the Stem Cell Products is false and misleading;

    g.      The proper equitable and injunctive relief;

    h.      The proper amount of actual or compensatory damages;

    i.      The proper amount of restitution or disgorgement;

    j.      The proper amount of punitive damages; and

    k.      The proper amount of reasonable litigation expenses and attorneys' fees.

88.    Plaintiffs' claims are typical of class members' claims in that they are based on the same underlying facts, events, and circumstances relating to Defendant's conduct.

89.    Plaintiffs will fairly and adequately represent and protect the interests of the class, have no interests incompatible with the interests of the class, and have retained counsel competent and experienced in class action litigation.

90.    Class treatment is superior to other options for resolution of the controversy because the relief sought for each class member is small such that, absent representative litigation, it would be infeasible for class members to redress the wrongs done to them.

91.    Questions of law and fact common to the class predominate over any questions affecting only individual class members.

92.    As a result of the foregoing, class treatment is appropriate under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3).

## COUNT I
## VIOLATION OF THE MAGNUSON-MOSS WARRANTY ACT
### (15 U.S.C. § 2301, *et seq.*)
### (By the Nationwide Class)

93.    Plaintiffs and Class members reallege and incorporate by reference each

allegation set forth above and further allege as follows.

94.     Plaintiffs bring this Count I individually and on behalf of the members of the Nationwide Class, against Defendant.

95.     The Stem Cell Products are consumer products as defined in 15 U.S.C. § 2301(1).

96.     The Stem Cell Products are sold at retail for more than twenty five dollars.

97.     Defendant is a supplier and warrantor as defined in 15 U.S.C. § 2301 (4) and (5).

98.     In connection with the sale of the Stem Cell Products, Defendant issued written warranties as defined in 15 U.S.C. § 2301 (6), which warranted that the Stem Cell Products contained plant stem cells that could reverse the signs of aging and that the Products have an effect on the skin's DNA.

99.     In connection with the sale of the Stem Cell Products, Defendant impliedly warranted as defined in 15 U.S.C. §2301(7), that the products were of merchantable quality, such that the products were of the same average grade, quality, and value as similar goods sold under similar circumstances.

100.    Defendant breached these warranties because the Stem Cell Products are not effective for their intended use and plant stem cells have never been proven effective by competent and reliable scientific evidence to reverse the signs of aging.

101.    Plaintiffs provided notice of Defendant's breach of warranties prior to filing suit.

102.    By reason of Defendant's breach of the express written warranties, Defendant violated the statutory rights owed to Plaintiffs and Class members pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C. § 2301 *et seq.*, thereby damaging Plaintiffs and Class members.

103.    Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Stem Cell Products if the true

facts had been known.

104.    Prior to filing this action, Plaintiffs, by and through their counsel, provided Defendant with written notice of their claims pursuant to 15 U.S.C. § 2310(e) and also notified Defendant that they are acting on behalf of a Class defined as all persons in the United States who purchased Stem Cell Products.

**COUNT II**

**BREACH OF EXPRESS WARRANTY**

**(By the Nationwide Class)**

105.    Plaintiffs and the Class members reallege and incorporate by reference each allegation set forth above and further allege as follows.

106.    Plaintiffs bring this Count II individually and on behalf of the members of the Class against Defendant.

107.    Defendant, as manufactures, marketers, distributors, or sellers, expressly warranted that the plant stem cells in the Stem Cell Products were effective at reducing the signs of aging.  Defendant expressly warranted through advertisements and online marketing that the Stem Cell Products could repair the skin's DNA.

108.    In fact, the Stem Cell Products are not effective for their intended use and the plant stem cells that are purportedly contained in the Products have never been proven effective by competent and reliable scientific evidence to reduce the signs of aging.

109.    Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Stem Cell Products if the true facts had been known.

110.    Defendant breached its express warranty by selling a product that is not effective for its intended use and plant stem cells have never been proven effective by competent and

reliable scientific evidence.

## COUNT III

## BREACH OF IMPLIED WARRANTY OF MERCHANTABILITY

### (By the Nationwide Class)

111.    Plaintiffs and the Class members repeat and reallege each and every allegation above, as if set forth in full herein.

112.    Plaintiffs bring this Count III individually and on behalf of the members of the Class against Defendant.

113.    Defendant, as the designer, manufacturer, marketer, distributor, and seller impliedly warranted that the Stem Cell Products were fit for their intended purpose in that the stem cells in the Stem Cell Products would be effective at reducing the signs of aging. Defendant did so with the intent to induce Plaintiffs and members of the Class to purchase the Products.

114.    Defendant breached its implied warranties in the contract for the sale of the Stem Cell Products because the plant stem cells in the Products are not effective at reversing the signs of aging. Moreover, the Products are not effective at repairing the skin's DNA.

115.    In reliance upon Defendant's skill and judgment and the implied warranties discussed above, Plaintiffs and the Class members purchased the Stem Cell Products to help reverse the sings of aging.

116.    The Stem Cell Products were not altered by Plaintiffs and Class Members.

## COUNT IV

## UNJUST ENRICHMENT

### (By the Nationwide Class)

117.    Plaintiffs and the Class members incorporate by reference and re-allege each and every allegation set forth above as though fully set forth herein.

118.    Plaintiffs bring this Count IV individually and on behalf of the members of the

Class against Defendant.

119.   "The unjust enrichment claim can be made from common class wide proof." *Westways World Travel, Inc. v. AMR Corp.,* 218 F.R.D. 223, 239 (C.D. Cal. 2003) (certifying a nationwide class where plaintiffs alleged defendants were unjustly enriched through a common scheme.). "Although there are numerous permutations of the elements of the unjust enrichment cause of action in the various states, there are few real differences. In all states, the focus of an unjust enrichment claim is whether the defendant was unjustly enriched. At the core of each state's law are two fundamental elements - the defendant received a benefit from the plaintiff and it would be inequitable for the defendant to retain that benefit without compensating the plaintiff. The focus of the inquiry is the same in each state." *In re Mercedes-Benz Tele Aid Contract Litig.,* 257 F.R.D. 46, 58 (D.N.J. Apr. 24, 2009), quoting *Powers v. Lycoming Engines,* 245 F.R.D. 226,231 (E.D. Pa. 2007).

120.   Plaintiffs and the Class members conferred a benefit on Defendant by purchasing the Stem Cell Products.

121.   Defendant has been unjustly enriched in retaining the revenues derived from Class members' purchases of the Stem Cell Products, which retention under these circumstances is unjust and inequitable because Defendant misrepresented the facts concerning the efficacy of the Products and caused Plaintiffs and the Class to lose money as a result thereof.

122.   Plaintiffs and the Class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Stem Cell Products if the true facts had been known. Because Defendant's retention of the non-gratuitous benefit conferred on them by Plaintiffs and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiffs and Class members for their unjust enrichment, as ordered by the Court.

**COUNT V**

**VIOLATION OF THE UNFAIR COMPETITION LAW,**

**(CAL. BUS. & PROF. CODE §§ 17200 *et seq.*)**

**(By the California Subclass)**

123.    Plaintiff Reid and the California Subclass members repeat and reallege each and every allegation above, as if set forth in full herein.

124.    Plaintiff Reid brings this Count VII on behalf of herself and on behalf of the California Subclass members.

125.    The UCL prohibits any "unlawful, unfair or fraudulent business act or practice," Cal. Bus. & Prof. Code § 17200.

**<u>Fraudulent</u>**

126.    As set forth herein, Defendant's claims relating to the Stem Cell Products are false or misleading, and likely to deceive reasonable consumers and the public.

**<u>Unlawful</u>**

127.    Defendant has misbranded the Stem Cell Products. Misbranding is a "[p]rohibited act[]" under the FDCA, 21 U.S.C. § 331, and therefore Defendant has behaved in an "unlawful" manner under the UCL.

128.    Defendant has illegally marketed new drugs in violation of 21 U.S.C. § 355(a) and Cal. Health & Safety Code § 110110, and therefore has behaved in an "unlawful" manner under the UCL.

**<u>Unfair</u>**

129.    Defendant's conduct with respect to the labeling, advertising, and sale of Stem Cell Products is unfair because Defendant's conduct was immoral, unethical, unscrupulous, or substantially injurious to consumers and the utility of its conduct, if any, does not outweigh the

36

gravity of the harm to its victims.

130. Defendant's conduct with respect to the labeling, advertising, and sale of the Stem Cell Products is also unfair because it violates public policy as declared by specific constitutional, statutory or regulatory provisions, including but not limited to the False Advertising Law, the Consumers Legal Remedies Act, portions of the Federal Food, Drug, and Cosmetic Act, and portions of the California Sherman Food, Drug, and Cosmetic Law.

131. Defendant's conduct with respect to the labeling, advertising, and sale of the Stem Cell Products is also unfair because the consumer injury is substantial, not outweighed by benefits to consumers or competition, and not one consumers themselves can reasonably avoid.

132. In accordance with Cal. Bus. & Prof. Code § 17203, Plaintiff Reid and members of the California Subclass seek an Order enjoining Defendant from continuing to conduct business through fraudulent or unlawful acts and practices, and to commence a corrective advertising campaign.

133. On behalf of herself and the California Subclass, Plaintiff Reid also seeks an Order for the restitution of all monies from the sale of Stem Cell Products that were unjustly acquired through acts of fraudulent, unlawful, or unfair competition.

## COUNT VI
## VIOLATION OF THE CALIFORNIA FALSE ADVERTISING LAW
### (CAL. BUS. & PROF. CODE §§ 17500 *et seq.*)
### (By the California Subclass)

134. Plaintiff Reid and the California Subclass members repeat and reallege each and every allegation above, as if set forth in full herein.

135. Plaintiff Reid brings this Count VIII on behalf of herself and on behalf of the California Subclass members.

136.     The False Advertising Law prohibits any statement in connection with the sale of goods "which is untrue or misleading," Cal. Bus. & Prof. Code § 17500.

137.     As set forth herein, Defendant's claims relating to the Stem Cell Products are untrue and misleading.

138.     Defendant knew, or reasonably should have known, that the claims were untrue or misleading.

139.     Plaintiff Reid and members of the California Subclass are entitled to injunctive and equitable relief, and restitution in the amount they spent on the Stem Cell Products.

**COUNT VII**

**VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT**
**(CAL. CIV. CODE §§ 1750** *et seq.***)**
**(By the California Subclass)**

140.     Plaintiff Reid and the California Subclass members repeat and reallege each and every allegation above, as if set forth in full herein.

141.     Plaintiff Reid brings this Count IX on behalf of herself and on behalf of the California Subclass members.

142.     The CLRA prohibits deceptive practices in connection with the conduct of a business that provides goods, property, or services primarily for personal, family, or household purposes.

143.     Defendant's policies, acts, and practices were designed to, and did, result in the purchase and use of the products primarily for personal, family, or household purposes, and violated and continue to violate the following sections of the CLRA:

    a.     § 1770(a)(5): representing that goods have characteristics, uses, or benefits which they do not have;

    b.     § 1770(a)(7): representing that goods are of a particular standard, quality,

38

or grade if they are of another;

c.    § 1770(a)(9): advertising goods with intent not to sell them as advertised; and

d.    § 1770(a)(16): representing the subject of a transaction has been supplied in accordance with a previous representation when it has not.

144.    As a result, Plaintiff Reid and the California Subclass members have suffered irreparable harm and are entitled to injunctive relief.

145.    In compliance with Civ. Code § 1782, Plaintiff Reid sent written notice to G.M. Defendant of her claims.

146.    In addition to injunctive relief, Plaintiff Reid and the California Subclass members are entitled to actual and punitive damages, as well as reasonable attorneys' fees.

## COUNT VIII
## VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT
### (RCW §§ 19.86 *et seq.*)
### (By the Washington Subclass)

147.    Plaintiff Waters and the Washington Subclass members repeat and reallege each and every allegation above, as if set forth in full herein.

148.    Plaintiff Waters brings this Count X on behalf of herself and on behalf of the Washington Subclass members.

149.    Defendant's above-described conduct in misleading consumers about the efficacy of the Stem Cell Products and its other above-described conduct constitutes an unfair trade practice, and unfair and deceptive acts and practices, within the meaning of the Washington Consumer Protection Act, RCW 19.86 *et seq.*

150.    The conduct complained herein occurred in the course of trade or commerce.

151.    Defendant's above-described conduct affects the public interest because it affected and injured many customers and Subclass members in the State of Washington.

152.    As a result of Defendant's unfair and deceptive conduct, Plaintiff and the Subclass have sustained actual damages.

153.    Defendant's above-described conduct proximately injured consumers because they would not have purchased the Stem Cell Products had they not been misled by Defendant.

154.    Plaintiff Waters and the Washington Subclass seek actual damage, attorneys' fees, costs, and statutory treble damages.

**COUNT IX**

**VIOLATIONS OF THE CONSUMER FRAUD LAWS OF THE VARIOUS STATES**
**(By the Nationwide Class)**

155.    Plaintiffs incorporate by reference and re-alleges each and every allegation set forth above as though fully set forth herein.

156.    Plaintiffs bring this Count XI individually and on behalf of the members of the Nationwide Class against Defendant in the alternative to Counts V & VI.

157.    By falsely and misleadingly claiming that plant stem cells in the Stem Cell Products reverse the signs of aging and that the Products can repair the skin's DNA, Defendant has engaged in unfair competition or unlawful, unfair, misleading, unconscionable, or deceptive acts in violation of the state consumer statutes listed below.

158.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALA. CODE§ 8-19-1, *et seq.*

159.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ALASKA STAT. CODE§ 45.50.471, *et seq.*

160.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ARIZ. REV. STAT.§ 44-1522, *et seq.*

161.    Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of ARK. CODE ANN.§ 4-88-107, *et seq.*

162.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or have made false representations in violation of COLO. REV. STAT.§ 6-1-101, *et seq.*

163.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of CONN. GEN. STAT § 42-110b, *et seq.*

164.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of DEL. CODE ANN. tit. 6, § 2511, *et seq.*

165.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of D.C. CODE ANN.§ 28-3901, *et seq.*

166.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of FLA. STAT. ANN.§ 501.201, *et seq.*

167.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of GA. CODE ANN. §10-1-392, *et seq.*

168.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of HAW. REV. STAT.§ 480, *et seq.*

169.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IDAHO CODE§ 48-601, *et seq.*

170.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 815 ILL. COMP. STAT. 505/1, *et seq.*

171.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of IND. CODE ANN.§ 24-5-0.5-1, *et seq.*

172.    Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of IOWA CODE §714.16, *et seq.*

173.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KAN. STAT.§ 50-623, *et seq.*

174.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of KY. REV. STAT. ANN.§ 367.110, *et seq.*

175.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of LA. REV. STAT.§ 51:1404, *et seq.*

176.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of ME. REV. STAT. tit. 5, § 205-A, *et seq.*

177.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MD. CODE. ANN., COM. LAW§ 13-101, *et seq.*

178.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation MASS. GEN LAWS ch. 93A, § 1, *et seq.*

179.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MICH. COMP. LAWS§ 445.901, *et seq.*

180.     Defendant has have engaged in unfair competition or unfair or deceptive acts or practices in violation of MINN. STAT.§ 8.31, *et seq.*

181.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MISS. CODE ANN. § 75-24-3, *et seq.*

182.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MO. REV. STAT.§ 407.010, *et seq.*

183.     Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of MONT. CODE ANN.§ 30-14-101, *et seq.*

184.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEB. REV. STAT.§ 59-1601, *et seq.*

185.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of NEV. REV. STAT. 598.0903, *et seq.*

186.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.H. REV. STAT. ANN.§ 358-A:1, *et seq.*

187.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.M. STAT. ANN.§ 57-12-1, *et seq.*

188.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.J.S.A. § 56:8-1, *et seq.*

189.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.C. GEN. STAT.§ 75-1.1, *et seq.*

190.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.D. CENT. CODE§ 51-15-01, *et seq.*

191.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of N.Y. GBL § 349, *et seq.* and § 350, *et seq.*

192.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of the OHIO REV. CODE ANN. § 1345.01, *et seq.* and OHIO REV. CODE ANN.§ 4165.01, *et seq.*

193.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices or made false representations in violation of OKLA. STAT. tit. 15, § 751, *et seq.*

194.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of OR. REV. STAT.§ 646.605, *et seq.*

195.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of 73 PA. CONS. STAT.§ 201-1, *et seq.*

196.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of R.I. GEN. LAWS § 6-13.1-1, *et seq.*

197.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.C. CODE§ 39-5-10, *et seq.*

198.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of S.D. CODIFIED LAWS § 37-24-1, *et seq.*

199.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TENN. CODE ANN.§ 47-18-101, *et seq.*

200.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of TEX. BUS. & COM. CODE ANN.§ 17.41, *et seq.*

201.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of UTAH CODE. ANN.§ 13-11-1, *et seq.*

202.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VT. STAT. ANN. tit. 9, § 2451, *et seq.*

203.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of VA. CODE ANN. § 59.1-196, *et seq.*

204.    Defendant has engaged in unfair competition or unfair, deceptive or fraudulent acts or practices in violation of WASH. REV. CODE§ 19.86.010, *et seq.*

205.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of W. VA. CODE§ 46A-6-IOI, *et seq.*

206.    Defendant has engaged in unfair competition or unfair or deceptive acts or

practices in violation of WIS. STAT.§ 100.18, *et seq.*

207.    Defendant has engaged in unfair competition or unfair or deceptive acts or practices in violation of WYO. STAT. ANN.§ 40-12-101, *et seq.*

208.    The acts, practices, and misrepresentations by Defendant described above, and Defendant's dissemination of deceptive and misleading advertising and marketing materials in connection therewith, occurring in the course of conduct involving trade or commerce, constitute unfair methods of competition and unfair or deceptive acts or practices within the meaning of each of the above-enumerated statutes, because each of these statutes generally prohibit deceptive conduct in consumer transactions. Defendant violated each of these statutes by making false and misleading statements that plant stem cells in the Stem Cell Products can reverse the signs of aging and that the Products can repair the skin's DNA.

209.    Plaintiffs and the class members were injured as a direct and proximate result of Defendant's breach because they would not have purchased the Stem Cell Products if the true facts had been known.

### RELIEF DEMANDED

WHEREFORE, Plaintiffs, on behalf of themselves, all others similarly situated, and the general public, prays for judgment and relief against Defendant as follows:

A.    An order declaring this action to be a proper Class Action and requiring Defendant to bear the costs of Class notice;

B.    An order awarding declaratory relief, retrospective and prospective injunctive relief as permitted by law or equity, including enjoining Defendant from continuing the unlawful practices as set forth herein, and injunctive relief to remedy Defendant's past conduct;

C.    An order awarding restitution of the purchase price of the Stem Cell Products to

Plaintiffs and the proposed Class members; and restitutionary disgorgement of Defendant's revenues from all the Stem Cell Product purchases made by Plaintiffs and proposed Class members;

D.      An order compelling Defendant to engage in a corrective advertising campaign to inform the public concerning the true nature of the Stem Cell Products, including a recall of the falsely labeled Products;

E.      An order awarding Plaintiffs and the Class members damages and punitive damages in the amount to be determined at trial;

F.      An order awarding costs, expenses, and reasonable attorneys' fees; and

G.      An order providing for all other such equitable relief as may be just and proper.

## JURY DEMAND

Plaintiffs hereby demand a trial by jury on all causes of action so triable.

DATED: March 11, 2015                          Respectfully Submitted,


**FARUQI & FARUQI, LLP**


By: *s/ Antonio Vozzolo*
       Antonio Vozzolo (N.D.N.Y. 519247)
       Javier Hidalgo
       369 Lexington Avenue, 10th Floor
       New York, NY 10017
       Tel:  212-983-9330
       Fax:  212-983-9331
       Email: avozzolo@faruqilaw.com
              jhidalgo@faruqilaw.com


**THE LAW OFFICES OF
RONALD A. MARRON**
RONALD A. MARRON (*pro hac* to be filed)
651 Arroyo Drive
San Diego, California 92103
Telephone:     (619) 696-9006
Facsimile:     (619) 564-6665

Email:  ron@consumeradvocates.com

***Counsel for Plaintiffs and
the Proposed Class***