**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**ELIZA REID and TRACY WATERS,**
**on behalf of themselves and all others similarly situated,**

**Plaintiffs,**

**v.**                                                      **8:15-CV-277 (BKS/CFH)**


**GMC SKIN CARE USA INC. d/b/a G.M. COLLIN,**

**Defendant.**
_____

**APPEARANCES:**

*For Plaintiffs*

Faruqi & Faruqi, LLP
Antonio Vozzolo, Esq.
369 Lexington Avenue, 10th Floor
New York, New York 10017

The Law Offices of Ronald A. Marron
Ronald A. Marron, Esq.
651 Arroyo Drive
San Diego, California 92103

*For Defendant*

Nicholas & Tomasevic, LLP
Craig M. Nicholas, Esq.
Alex M. Tomasevic, Esq.
225 Broadway, 19th Floor
San Diego, California, 92101

**Hon. Brenda K. Sannes, United States District Judge:**

**MEMORANDUM-DECISION AND ORDER**

## I.    INTRODUCTION

Plaintiffs Eliza Reid and Tracy Waters bring this proposed class action against defendant GMC Skin Care USA Inc., doing business as G.M. Collin, ("Defendant"), seeking compensatory and injunctive relief for Defendant's allegedly false and misleading marketing and sale of its Phyto Stem Cell+ line of anti-aging skin care products. Dkt. No. 1. Plaintiffs assert claims on behalf of themselves and others similarly situated who purchased the Phyto Stem Cell+ products alleging: violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301, *et seq*. (Count 1); breach of express warranty (Count 2); breach of implied warranty of merchantability (Count 3); unjust enrichment (Count 4); violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code §§ 17200 *et seq*. (Count 5); California's False Advertising Law, Cal. Bus & Prof. Code §§ 17500 *et seq*. (Count 6); California's Consumers Legal Remedies Act, Cal. Civ. Code §§ 1750 *et seq*., (Count 7); the Washington Consumer Protection Act, RCW §§ 19.86 *et seq*., (Count 8); and violation of the consumer fraud statutes of each of the fifty states (Count 9).[1]

Defendant moves to dismiss (Dkt. No. 16) the complaint under Rules 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) Plaintiffs lack standing to pursue the majority of their claims; (2) Plaintiffs' cosmetic and drug misbranding claims are expressly or impliedly preempted by the Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*., and should be referred to the Food and Drug Administration under the doctrine of

---

[1] Plaintiffs have withdrawn Count 9. Dkt. No. 19, p. 18 n.5. Accordingly, Count 9 is dismissed.

primary jurisdiction; and (3) the allegations in the complaint fail to meet, *inter alia*, the particularity requirements of Rule 9 of the Federal Rules of Civil Procedure. Dkt. No. 16. Plaintiffs oppose Defendant's motion. Dkt. No. 19. For the following reasons, Defendant's motion to dismiss is granted in part and denied in part.

## II.    COMPLAINT[2]

Defendant manufactures and sells the Phyto Stem Cell+ line of products, including Phyto Stem Cell+ serum, gel-cream, cream, eye contour cream, and mask, which retail from approximately $50.00 to $136.00 per unit. Dkt. No. 1, ¶¶ 1, 22. The Phyto Stem Cell+ line's labels and marketing materials claim that the products contain plant stem cells and that they "reverse the aging process," reduce wrinkles, enhance skin elasticity, and improve cellular metabolism "resulting in [a] DNA repair effect." Dkt. No. 1, ¶ 24.

Plaintiff Eliza Reid, a resident of California, purchased the Phyto Stem Cell+ eye contour cream for approximately $50.00 from a Walgreens store in California in or around February 2014. Dkt. No. 1, ¶ 8. Plaintiff Tracy Waters, a resident of Washington, purchased the Phyto Stem Cell+ eye contour cream for approximately $65.00 on Amazon.com in or around March 2013. Dkt. No. 1, ¶ 7. Both Reid and Waters "purchased the [eye contour cream] in reliance on Defendant's misrepresentations, including those found on the product labeling . . . or in various advertisements and promotional materials." *Id*. at ¶¶ 7, 8. Plaintiffs "paid a significant premium because of the false and misleading claims [they] relied upon." *Id*. They found, however, that the

---

[2] The facts are drawn from the Complaint and are assumed to be true for the purposes of this motion. *See Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001).

product "was worthless (and certainly worth less than its representations suggested), and . . . would not have purchased [the eye contour cream] if [they] had known that the claims on the labels were false, misleading, and misbranded." *Id*. Plaintiffs do not claim to have purchased any other product in the Phyto Stem Cell+ line of products.

### A.     Product Labeling

According to the complaint, the Phyto Stem Cell+ line's packaging and marketing materials inform consumers that: "As we age, the epidermal stem cells responsible for the formation of new healthy skin cells are significantly reduced and their action becomes less efficient" and that "Plant stem cells regulate the activity and vitality of the epidermal stem cells and genes, resulting in increased skin cell longevity and formation." Dkt. No. 1, ¶ 33. Defendant's products feature "the double helix design [of DNA] alongside the claims that Stem Cell Products will 'Reverse the Signs of Aging' and 'help reverse the aging process.'" Dkt. No. 1, ¶ 31.

Plaintiffs included a copy of the Phyto Stem Cell+ eye contour cream packaging in the complaint. Dkt. No. 1, ¶ 34. It states: "This advanced anti-aging eye contour cream moisturizes, soothes and visibly improves the firmness of the skin and the appearance of dark circles, puffiness, wrinkles and fine lines" and "visibly improves the overall appearance of the eye area." *Id*. It further states:

- **Plant stem cells**: regulate the activity and vitality of the epidermal stem cells and genes, resulting in **increased skin cell longevity and formation.**

- **Renovage**®: prolongs the skin cell and tissue life span, and improves cellular metabolism, resulting in a **DNA repair effect.**

- **Orsirtine**™: promotes skin cell **survival and longevity.**

4

- **Argigeline**, **Myoxinol**, **Haloxyl®**, **Eyeliss®**, and **Matrixyl®**: reduce expression lines and wrinkles, dark circles, puffiness and loss of tone.

Dkt. No. 1, ¶ 34. The complaint also contains a copy of the Phyto Stem Cell+ cream packaging,

which states:

> PROMOTE THE CELLULAR VITALITY OF YOUR SKIN!
> This advanced anti-aging cream, specifically formulated to suit the needs of dry skin:
> - Improves skin elasticity.
> - Stimulates collagen synthesis to reduce the appearance of fine lines and wrinkles.
> - Regulates the activity and vitality of the epidermal stem cells and genes.
> - Promotes skin cell survival and longevity.
> - Improves cellular metabolism resulting in a DNA repair effect.
>
> CLINICAL EVALUATIONS SHOW THAT THE SKIN APPEARS REJUVENATED IN LESS THAN 28 DAYS!
>
> MAIN INGREDIENTS:
> - Plant stem cells
> - Renovage®
> - Orsirtine™
> - Matrixyl™ 3000

Dkt. No. 1, ¶ 35.

**B.      G.M. Collin's Website**

According to its website, Defendant G.M. Collins is "an unequivocal leader in innovative

skin care solutions by continually offering the highest quality, clinically proven, scientifically

advanced preparations in both our unique, cost effective, pre-dosed clinical formulations." Dkt.

No. 1, ¶ 9. Defendant's website further claims that its products are developed internally by "[a]

team of highly skilled scientists," who select "only ingredients that have been proven safe and

effective, and us[e] them in optimal doses for the aesthetic conditions they are to treat." *Id.*

5

Defendant's website also states that: "This advanced anti-aging skin care collection with PLANT STEM CELLS, specifically formulated to suit the needs of all skin types, improves the appearance of fine lines and wrinkles, visibly enhances skin elasticity and provides a rejuvenating effect to the skin." Dkt. No. 1, ¶ 26.

The complaint includes screen shots from the webpages for the serum, cream, gel-cream, and eye contour cream as well as a screen shot showing the "Synergistic Effect," that may be "obtained with the application" of the serum, cream, and eye contour cream. Dkt. No. 1, pp. 9-11. The screen shots contain before and after pictures and purport to show a 26 to 97 percent reduction in wrinkles "after 28 days" with the use of Phyto Stem Cell+ products. *Id*. According to the complaint, the Phyto Stem Cell+ product line "employs a design of intertwined double-stranded molecules, which is immediately recognizable as the 'double helix design of DNA.'" Dkt. No. 1, ¶ 29.

### C.    False and Misleading Claims

Plaintiffs contend that Defendant's claims that the Phyto Stem Cell+ products reverse the signs of aging and repair DNA are false and misleading because it is "scientifically impossible for plant stem cells to interact with human skin cells in a way that would reduce the effects of aging," and that "there is no possible way that any ingredient applied to the skin can repair past DNA damage." Dkt. No. 1, ¶¶ 44, 47. Plaintiffs cite several professors and scientists, as well as excerpts from magazine, newspaper, and online articles in support of their assertion that Defendant's claims are false and misleading. For example, according to the complaint: Paolo U. Giacomoni, the former executive director of research at Estee Lauder and the recipient of "a Laurea in Atomic Physics from the University of Milan and a Ph.D. in Biochemistry from the

6

University of Paris," has been "critical of the role of stem cells in cosmetics," and has stated that "[s]tem cell technology is still far from biomedical applications, let alone cosmetic ones." Dkt. No. 1, ¶ 41. Further, "a leading Professor of Botany at Oxford University was quoted by *The Daily Mail* saying, 'I don't see how plant stem could interact with human stem cells in this way,'" *id*. at ¶ 43, and Dr. Waleed Ezzat, M.D., a facial reconstructive surgeon at the Boston Medical Center, was quoted by *Boston Magazine* as saying, "The bottom line is that there is no conclusive scientific data that absorbing stem cell extracts from a cream can really reverse the aging process. My advice is that a good cream is a good cream. But if the advertising seems to [sic] good to be true, it most likely is. Buyer beware." *Id*.

Plaintiffs also challenge Defendant's claim that its products can repair genes and have a "DNA repair effect," and assert that Leonard Guarente, Ph.D., an MIT biologist and genetic researcher, stated that "No known substance can cause genes to repair themselves." *Id*. at ¶ 47. Plaintiffs also quote *The Daily Mail*, which reported that: "Some skincare products make extravagant claims to be able to repair your DNA via creams that contain the same enzymes that the body produces, but many experts are skeptical." *Id.*

## III.    DISCUSSION

### A.    Standard for Motion to Dismiss under Rule 12(b)(1)

"In resolving a motion to dismiss under Rule 12(b)(1), the district court must take all uncontroverted facts in the complaint . . . as true, and draw all reasonable inferences in favor of the party asserting jurisdiction." *Tandon v. Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d 239, 243 (2d Cir. 2014) (citing *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 145 (2d Cir. 2011) (per curiam)). "Dismissal for lack of subject matter jurisdiction is proper when the

district court lacks the statutory or constitutional power to adjudicate a case." *Sokolowski v. Metro. Transp. Auth.*, 723 F.3d 187, 190 (2d Cir. 2013). In resolving a motion to dismiss for lack of subject matter jurisdiction, the Court may consider competent evidence outside the pleadings, such as affidavits and exhibits. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000) (internal quotation marks and citation omitted). Once subject matter jurisdiction is challenged, the plaintiff "has the burden of proving by a preponderance of the evidence that jurisdiction exists." *Giammatteo v. Newton*, 452 F. App'x  24, 27 (2d Cir. 2011) (citing *Makarova*, 201 F.3d at 113).

### B.     Standing

#### 1.      Products Not Purchased

Defendant argues that Plaintiffs, who do not claim to have purchased anything but the eye cream, lack both Article III and class standing to assert claims in connection with the serum, cream, gel-cream, and mask. Dkt. No. 16-1, p. 13. Plaintiffs respond that Defendant "conflates individual standing under Article III of the U.S. Constitution" and class standing, Dkt. No. 19, p. 12, and that Plaintiffs have satisfied the requirements for Article III standing because they assert direct claims against Defendant. *Id.*, p. 13.

"An important component of the Article III jurisdictional limit of federal courts to deciding 'cases' or 'controversies' is standing." *All. For Envtl. Renewal, Inc. v. Pyramid Crossgates Co.*, 436 F.3d 82, 85 (2d Cir. 2006). "[T]he doctrine of standing . . . requires every federal plaintiff to establish, 'for each claim [s]he seeks to press," a personal injury that is fairly traceable to the defendant's conduct and likely to be redressed by the requested relief." *Ret. Bd. of the Policemen's Annuity & Benefit Fund of the City of Chicago v. Bank of N.Y. Mellon*, 775

8

F.3d 154, 159 (2d Cir. 2014) (quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 352 (2006)). To establish Article III standing, a plaintiff must show "(1) an injury in fact, (2) a sufficient causal connection between the injury and the conduct complained of, and (3) a likelihood that the injury will be redressed by a favorable decision." *Knife Rights, Inc. v. Vance*, 802 F.3d 377, 383 (2d Cir. 2015) (internal quotation marks and alteration omitted).

Article III standing and class standing are different issues that require separate consideration; class standing is often considered at the class certification stage of the litigation. *See, e.g., In re LIBOR-Based Fin. Instruments Antitrust Litig.*, 27 F. Supp. 3d 447, 481 (S.D.N.Y. 2014) ("[C]ourts in this district have recognized that the Second Circuit considers the questions of Article III, statutory, and class standing as distinct.") (citing *NECA–IBEW Health & Welfare Fund v. Goldman Sachs & Co.*, 693 F.3d 145 (2d Cir. 2012)); *Policemen's Annuity & Benefit Fund of Chi. v. Bank of Am., NA*, No. 12 Civ. 2865(KBF), 2013 WL 5328181, at *4, 2013 U.S. Dist. LEXIS 135867, at *11-12 (S.D.N.Y. Sept. 23, 2013) ("'Class standing'—the doctrine governing whether a named plaintiff may represent the interests of a class—is different from Article III standing. In the class action context, the Second Circuit has held that it is possible to have one and not the other.") (citing *NECA-IBEW*, 693 F.3d at 158).

In *NECA–IBEW*, the Second Circuit held that "[t]o establish Article III standing in a class action . . . for every named defendant there must be at least one named plaintiff who can assert a claim directly against that defendant, and at that point standing is satisfied and only then will inquiry shift to a class action analysis." *NECA–IBEW*, 693 F.3d at 158 (citing *Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck–Medco Managed Care, L.L.C.*, 504 F.3d 229, 241 (2d Cir. 2007)).  The named plaintiff in *NECA-IBEW* had established Article III and statutory

standing to pursue claims of material misstatements in connection with its purchase of mortgage-backed certificates (Certificates) issued in two Offerings. *Id.* at 148-49, 158. The court considered whether the plaintiff had "class standing" to assert claims on behalf of purchasers of other Certificates issued under the same allegedly false shelf registration statement but sold in different Offerings. *Id*. at 157-58. The court held that the district court erred in concluding, based on the fact that the plaintiff had purchased just two particular Certificates, that the plaintiff "necessarily lacked standing to assert claims on behalf of purchasers of [other] Certificates." *Id.* at 158. To establish "class standing" a plaintiff must plausibly allege "(1) that he personally has suffered some actual . . . injury as a result of the putatively illegal conduct of the defendant . . . and (2) that such conduct implicates the same set of concerns as the conduct alleged to have cause injury to other members of the putative class by the same defendants." *Id.* at 162 (citations and internal quotations omitted).

Here, Plaintiffs sufficiently allege that they, individually, have Article III standing to assert claims with respect to the eye contour cream. *See, e.g., Quinn v. Walgreen Co.*, 958 F. Supp. 2d 533, 542 (S.D.N.Y. 2013) ("There is no question plaintiffs have standing to assert claims relating to the product they *did* purchase.") (emphasis in original). Plaintiffs allege that they purchased the eye contour cream and that they were injured as a result because they would not have purchased the product had they known the anti-aging and DNA repair claims were false and misleading. Dkt. No. 1, ¶¶ 7-8. As Plaintiffs sufficiently allege Article III standing, Defendant's argument that Plaintiffs lack standing to pursue claims on behalf of purchasers of other Phyto Stem Cell+ products is, "under *NECA-IBEW* . . . premature and should be addressed at the class certification stage." *Mosely v. Vitalize Labs, LLC*, No. 13 CV 2470 RJD RLM, 2015

WL 5022635, at *7, 2015 U.S. Dist. LEXIS 111857, at *19-20 (E.D.N.Y. Aug. 24, 2015).  In *In re Frito-Lay N. Am., Inc. All Nat. Litig.*, the court explained that:

> [B]ecause the plaintiffs have Article III standing, at this stage, they may press claims, on behalf of putative class members, arising out of products that the plaintiffs did not themselves purchase. Whether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products—and whether plaintiffs will therefore adequately represent the interests of the class—is a question the Court will consider on a Rule 23 certification motion.

No. 12-MD-2413 RRM RLM, 2013 WL 4647512, at *13, 2013 U.S. Dist. LEXIS 123824, at *42 (E.D.N.Y. Aug. 29, 2013); *see also Ault v. J.M. Smucker Co.*, No. 13 CIV. 3409 PAC, 2014 WL 1998235, at *7, 2014 U.S. Dist. LEXIS 67118, at *22 (S.D.N.Y. May 15, 2014) (denying motion to dismiss claims regarding Crisco Oil products that the named plaintiff did not purchase because plaintiff had Article III standing to bring claims regarding Crisco Oil products she had purchased and "[w]hether the plaintiffs' injuries are sufficiently similar to those of the putative class members who purchased other products-and whether plaintiffs will therefore adequately represent the interests of the class-is a question the Court will consider on a Rule 23 certification motion."); *Brady v. Basic Research, L.L.C.*, 101 F. Supp. 3d 217, 228 (E.D.N.Y. 2015); *but see Elkind v. Revlon Consumer Prods. Corp.*, No. 14-CV-2482(JS), 2015 WL 2344134, at *4, 2015 U.S. Dist. LEXIS 63464, at *10 (E.D.N.Y. May 14, 2015) (finding that the plaintiffs lacked Article III standing to pursue any claims arising from the sale or marketing of a cosmetic powder in the "Revlon Age Defying with DNA Advantage" line of products when they had purchased only the foundation and the concealer). Accordingly, Defendant's motion to dismiss Plaintiffs' claims arising from the labeling or advertising of products in the Phyto Stem Cell+ line that they did not purchase is denied. The Court will consider whether Plaintiffs have class standing

regarding these claims at the class certification stage. *See Mosely*, LLC, 2015 WL 5022635, at

*7, 2015 U.S. Dist. LEXIS 111857, at *21; *Brady*, 101 F. Supp. 3d at 228; *Quinn*, 958 F. Supp.

2d at 542; *Jovel v. i-Health, Inc.*, No. 12-CV-5614 JG, 2013 WL 5437065, at *10, 2013 U.S.

Dist. LEXIS 139661, at *30 (E.D.N.Y. Sept. 27, 2013). [3]

### 2.      Injunctive Relief

Plaintiffs seek "prospective injunctive relief as permitted by law or equity, including

enjoining Defendant from continuing the unlawful practices as set forth herein." Dkt. No. 1, p.

45. Defendant contends that Plaintiffs lack standing to bring claims for prospective injunctive

relief because they fail to allege any likelihood of continuing or future harm from Defendant's

alleged misrepresentations.

Standing requires, *inter alia*, that the plaintiff show an "actual or imminent" injury in

fact, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992) (internal quotation marks

omitted), and when seeking prospective injunctive relief, the plaintiff must prove the likelihood

---

[3] In *DiMuro v. Clinique Labs*., LLC, 572 F. App'x 27, 29 (2d Cir. 2014) (summary order), the plaintiffs sought class standing for seven different cosmetics under the "Repairwear" product line, when the plaintiffs had only purchased three of the products; each product had different ingredients; and the company made different advertising claims for each product.  The Second Circuit found that because "unique evidence" would "be required to prove that the 35–some advertising statements for each of the seven different Repairwear products [were] false and misleading," it could not say that "'claims brought by a purchaser of' one product 'would raise a set of concerns nearly identical to that of a purchaser' of another Repairwear product," and it affirmed the district court's dismissal, finding that the named plaintiffs lacked "class standing to bring claims for the four products that they did not purchase." *Id*. at 29. As other courts have noted, *DiMuro* "'decided the question of *class* standing, not Article III standing,'" *Mosely*, 2015 WL 5022635, at *7, 2015 U.S. Dist. LEXIS 111857, at *20 (quoting *Weisblum v. Prophase Labs, Inc.*, 88 F. Supp. 3d 283, 291 (S.D.N.Y. 2015) (citing *DiMuro*, 572 F. App'x at 29) (emphasis in original)).

of future or continuing harm, *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983). "To establish standing to obtain prospective [injunctive] relief, a plaintiff 'must show a likelihood that [s]he will be injured in the future.'" *Carver v. City of New York*, 621 F.3d 221, 228 (2d Cir. 2010) (quoting *Shain v. Ellison*, 356 F.3d 211, 215 (2d Cir. 2004)). "Although evidence of a past wrong is relevant as to whether there is a real and immediate threat of repeated injury, '[p]ast exposure to illegal conduct does not in itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effects.'" *Spiro v. Healthport Techs.*, *LLC*, 73 F. Supp. 3d 259, 269-72(S.D.N.Y. 2014) (quoting *O'Shea v. Littleton*, 414 U.S. 488, 495–96 (1974)).  An abstract injury is not enough; rather, "[t]he injury or threat of injury must be both 'real and immediate,' not 'conjectural' or 'hypothetical.'" *O'Shea*, 414 U.S. at 494; *see, e.g.*, *Carver*, 621 F.3d at 228 (finding that the plaintiff, who failed to allege "any intention to buy more lottery tickets" lacked standing to obtain prospective relief against the State of New York, which intercepted his lottery prize based on his status as a recipient of public assistance).

Plaintiffs allege that they found the eye contour cream "worthless" and that they would not have bought it if they had known "that the claims on the label were false, misleading, and misbranded." Dkt. No. 1, ¶¶ 7-8. There is no allegation in the complaint that Plaintiffs have any intention to buy any of the products at issue in this case again. Plaintiffs do not dispute Defendant's assertion that they are unlikely to purchase the products again in the future.  Instead, they argue that Defendant's "fraudulent conduct is ongoing and will undoubtedly continue . . . until [it is] enjoined" and that a finding that they lacked standing to seek injunctive relief would

"eviscerate the purpose of states' consumer protection statutes, particularly in situations where a defendant's conduct is continuing." Dkt. No. 19, p. 17.

There is some district court case law support for Plaintiff's argument. *See Belfiore v. Proctor & Gamble Co.*, 94 F. Supp. 3d 440, 445 (E.D.N.Y. 2015) ("Public policy, as well as precedent supports the rule that Article III standing exists to seek injunctive relief" under state consumer protection statutes even where a plaintiff is unlikely to purchase the product at issue again, "because to hold otherwise would effectively bar any consumer who avoids the offending product from seeking injunctive relief") (internal quotation marks omitted); *Ackerman v. Coca-Cola Co.*, No. 09 CV 395 DLI RML, 2013 WL 7044866, at *15 n.23, 2013 U.S. Dist. LEXIS 184232, at *56-60 n.23 (E.D.N.Y. July 18, 2013) (citing, *inter alia*, *Koehler v. Litehouse, Inc.*, No. 12 CV 04055, 2012 WL 6217635, at *6, 2012 U.S. Dist. LEXIS 176971, at *16-17 (N.D. Cal. Dec.13, 2012), *Larsen v. Trader Joe's Co.*, No. 11 CV 05188, 2012 WL 5458396, at *4, 2012 U.S. Dist. LEXIS 162402, at *11-12 (N.D. Cal. June 14, 2012)).

The Court, however, agrees with those courts which have held that dismissal of this type of prospective injunctive relief claim is required by Supreme Court and Second Circuit precedent. *See, e.g.*, *Elkind*, 2015 WL 2344134, at *3 n.2, 2015 U.S. Dist. LEXIS 63464, at *8 n.2; *Hidalgo v. Johnson & Johnson Consumer Cos., Inc.*, 15-cv-5199 (SAS), 2015 WL 8375196, n.65, 2015 U.S. Dist. LEXIS 164415, *14 n.65 (S.D.N.Y. Dec. 8, 2015); *Albert v. Blue Diamond Growers*, No. 15 Civ. 4087 (VM), 2015 WL 9455079, at *5, 2015 U.S. Dist. LEXIS 145033, at *13-14 (S.D.N.Y. 2015); *In re Avon Anti-Aging Skincare Creams & Products Mktg. & Sales Practices Litig.*, No. 13-CV-150 JPO, 2015 WL 5730022, at *8, 2015 U.S. Dist. LEXIS 133484, at *22 (S.D.N.Y. Sept. 30, 2015) (finding that the plaintiffs did not have standing to seek

14

forward-looking injunction because "Article III does not permit . . . public policy exception" to

further consumer protection statutes "and in any event, the Lanham Act and state consumer

protection statutes allow state governments and competitor to seek similar injunctive relief"). As

those courts have found, a plaintiff who has not alleged that she will purchase the offending

product in the future has not established the likelihood of future injury required by Supreme

Court and Second Circuit precedent. *Id.*; *see Lyons*, 461 U.S. at 102; *Carver*, 621 F.3d at 228.

Thus, Defendant's motion to dismiss the claims for prospective injunctive relief is granted.

### 3.    Laws of States other than California and Washington

Defendant moves to dismiss the "nationwide" state common law claims in Count 2

("Breach of Express Warranty"), Count 3 ("Breach of Implied Warranty of Merchantability"),

and Count 4 ("Unjust Enrichment"). Defendant concedes that Plaintiffs may assert claims under

California and Washington law, but argues that they lack standing to sue "under the laws of each

of the other 48 states that they never lived in []or did business in." Dkt. No. 16-1, p. 16.

Defendant further argues that Plaintiffs fail to allege how they have been injured under the laws

of the other 48 states or how "those states' laws apply" in this case. *Id.* Plaintiffs respond that

Defendant's arguments are premature and any inquiry "is most appropriate at the class

certification stage." Dkt. No. 19, p. 18.

Defendant has cited to district court decisions within this Circuit which support its

arguments.  Some courts have dismissed such claims at the pleading stage, holding that the

plaintiffs do not have standing to bring a claim on behalf of a class "under the laws of states

where the named plaintiffs have never lived or resided." *In re HSBC Bank, USA, N.A., Debit

Card Overdraft Fee Litig.*, 1 F. Supp. 3d 34, 50 (E.D.N.Y. 2014); *see Simington v. Lease Fin.*

*Grp., LLC*, No. 10 Civ. 6052, 2012 WL 651130, at \*7, 2012 U.S. Dist. LEXIS 25671, at \*20 (S.D.N.Y. Feb. 28, 2012) (concluding that the plaintiffs, who were attempting to bring a nationwide class action, "could only possibly have standing to bring consumer fraud claims under the consumer fraud statutes of those three states" with which they had a connection); *Jurgensen v. Felix Storch, Inc.*, No. 12 CIV. 1201 KBF, 2012 WL 2354247, at \*10, 2012 U.S. Dist. LEXIS 86312, at \*28 (S.D.N.Y. June 14, 2012) (holding that the "plaintiff does not have standing to bring claims for violations of consumer fraud statutes of states other than Washington—i.e., the state where she resides.") (citing *Simington*, 2012 WL 651130, at \*7, 2012 U.S. Dist. LEXIS 25671, at \*20).

Other district courts, however, have ruled that the issue regarding whether the named plaintiff's alleged injuries are sufficiently similar to those of the proposed nationwide class to justify the prosecution of a nationwide class action is an issue for the class certification stage. *See, e.g., In re Bayer Corp. Combination Aspirin Products Mktg. & Sales Practices Litig.,* 701 F. Supp. 2d 356, 376-77 (E.D.N.Y. 2010) (denying motion to dismiss claims brought under the laws of states other than the state of plaintiff's residence and purchases and noting that that the constitutional issue of standing should not be conflated with the Rule 23 issue regarding whether the named plaintiffs may represent the class); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 452 (S.D.N.Y. 2010) (denying the defendant's motion to dismiss state law claims for lack of standing, explaining that "[t]he class certification process will address whether named plaintiffs' injuries are sufficiently similar to those of the proposed class to justify a nationwide class action, and the answer to that question will determine whether there are plaintiffs with standing to bring claims under the laws of states in which no currently-named plaintiff resides"); *In re Digital*

*Music Antitrust Litig.*, 812 F. Supp. 2d 390, 406 (S.D.N.Y. 2011) (same); *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, No. 06MD1739(SWK)(MHD), 2006 WL 3039993, at *1, *3, 2006 U.S. Dist. LEXIS 78064, at *4, *10 (S.D.N.Y. Oct. 25, 2006) (denying motion to dismiss "claims under the laws of states other than those in which the Named Plaintiffs reside and purchased" the products at issue, explaining that "[t]he relevant question . . . is not whether the Named Plaintiffs have standing to sue Defendants-they most certainly do-but whether their injuries are sufficiently similar to those of the purported Class to justify the prosecution of a nationwide class action."). The Court utilizes the latter procedure in this case.

Here, as in *Blessing*, 756 F. Supp. 2d at 452, *In re Digital Music Antitrust Litig.*, 812 F. Supp. 2d at 406, and *In re Grand Theft Auto Video Game Consumer Litig. (No. II)*, 2006 WL 3039993, at *3, 2006 U.S. Dist. LEXIS 78064, at *10, Plaintiffs adequately allege standing to bring common law claims under the law of the states where they reside—California and Washington.  The Court will therefore defer the question regarding whether Plaintiffs may pursue claims on behalf of putative class members residing in other states to the class certification stage.  *Id*.; *see also Tomassini v. FCA U.S. LLC*, No. 3:14-CV-1226 MAD/DEP, 2015 WL 3868343, at *12, 2015 U.S. Dist. LEXIS 81009, at *32 (N.D.N.Y. June 23, 2015) (declining to strike class allegations in complaint because, "the issue of class certification is not presently before the Court, and the Court finds no reason to depart from the usual class certification procedure to allow Defendant to argue an issue generally best resolved at the class certification stage") (citing, *inter alia*, *Blessing*, 756 F. Supp. 2d at 450-51).  Accordingly, Defendant's motion to dismiss the common law claims under the laws of states with which Plaintiffs have no connection is denied.

C.       **Standard for Motion to Dismiss under Rule 12(b)(6)**

To survive a motion to dismiss, "a complaint must provide 'enough facts to state a claim to relief that is plausible on its face.'" *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). The plaintiff must provide factual allegations sufficient "to raise a right to relief above the speculative level." *Id.* (quoting *Bell*, 550 U.S. at 555). The Court must accept as true all factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor. *See E.E.O.C. v. Port Auth. of N.Y. & N.J.*, 768 F.3d 247, 253 (2d Cir. 2014) (citing *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 98 (2d Cir. 2007)).

D.       **Preemption – Counts 2-8**

Defendant moves to dismiss Counts 2 through 8[4] of the complaint, which allege that Defendant's marketing and labeling of its Phyto Stem Cell+ products violate California and Washington statutory and common law. Defendant argues that these claims are preempted by the Federal Food, Drug, and Cosmetic Act ("FDCA"), 21 U.S.C. § 301 *et seq*. "The Constitution's Supremacy Clause provides that 'the Laws of the United States . . . shall be the supreme Law of the Land . . . any Thing in the Constitution or Laws of any State to the Contrary notwithstanding.'" *Galper v. JP Morgan Chase Bank, N.A.*, 802 F.3d 437, 443 (2d Cir. 2015)

---

[4] Count 2 alleges breach of express warranty, Count 3 alleges breach of implied warranty of merchantability, Count 4 alleges unjust enrichment, Count 5 alleges violation of the California unfair competition law, Cal. Bus. & Prof. Code § 172000 *et seq*., Count 6 alleges violation of the California False Advertising Law, Cal. Bus. & Prof. Code § 17500 *et seq*., Count 7 alleges a violation of the California Consumers Legal Remedies Act, Cal. Civ. Code § 1750 *et seq*., and Count 8 alleges a violation of the Washington Consumer Protection Act, RCW § 19.86 *et seq*.

(quoting U.S. Const. art. VI, cl. 2)). "Under the Supremacy Clause of the United States

Constitution, 'state laws that conflict with federal law are without effect,' and are preempted."

*New York State Rest. Ass'n v. N.Y.C. Bd. of Health*, 556 F.3d 114, 123 (2d Cir. 2009) (internal

citation omitted) (quoting *Altria Group, Inc. v. Good*, 555 U.S. 70, 76 (2008)). "Congress may

preempt (or invalidate) a state law by means of a federal statute." *Galper*, 802 F.3d at 443.

Preemption may be express or, "in circumstances where it is clear that Congress intended to

occupy the entire regulatory field, where state law stands as an obstacle to the objectives of

Congress, or where compliance with both federal and state law is impossible," preemption may

be implied. *Galper*, 802 F.3d at 443 (citing *Oneok, Inc. v. Learjet, Inc.*, ___U.S.___, 135 S.Ct.

1591, 1595 (2015)). The Second Circuit has instructed that when a court is "considering a

preemption argument in the context of a motion to dismiss," it must view "the factual allegations

relevant to preemption . . . in the light most favorable to the plaintiff." *Id*. at 444. "A district

court may find a claim preempted only if the facts alleged in the complaint do not plausibly give

rise to a claim that is not preempted." *Id*.

    The drug and cosmetic preemption provisions at issue in this case are part of the FDCA

statutory regime, which "is designed primarily to protect the health and safety of the public at

large." *POM Wonderful LLC v. Coca–Cola Co.*, ___U.S.___, 134 S.Ct. 2228, 2234 (2014). The

FDCA "charges the Food and Drug Administration ('FDA') with protecting public health by

ensuring, *inter alia*, that 'drugs are safe and effective,' and that cosmetics are safe and properly

labeled." *O'Connor v. Henkel Corp.*, No. 14-CV-5547 ARR MDG, 2015 WL 5922183, at *3,

2015 U.S. Dist. LEXIS 140934, at *6 (E.D.N.Y. Sept. 22, 2015) (quoting 21 U.S.C. §§

393(b)(2)(B), (D)) (internal citation omitted). The FDA is authorized to "promulgate regulations

and enforce those regulations through administrative proceedings." *Id*. (citing 21 C.F.R. § 7.1 *et seq*.). There is no private right of action under the FDCA. *Medtronic, Inc. v. Lohr*, 518 U.S. 470, 487 (1996).

        **1.**        **Drugs Versus Cosmetics**

      Defendant contends that the products at issue are properly categorized as cosmetics, not drugs, under the FDCA. Dkt. No. 16-1, p. 12. Plaintiffs respond that the determination of whether the products are drugs or cosmetics (or both) "is irrelevant as the preemption statutes . . . apply the same standard for the purposes of preemption." Dkt. No. 19, p. 12 n.7. The determination of whether Defendant's products are drugs or cosmetics under the FDCA "hinges on the perceived intended use" of the products. *Elkind*, 2015 WL 2344134, at *7; 2015 U.S. Dist. LEXIS 63464, at *16. The FDCA defines "drugs" as, among other things, articles "intended for use in the diagnosis, cure, mitigation, treatment, or prevention of disease" and articles "intended to affect the structure or any function of the body." 21 U.S.C. § 321(g). The FDCA defines "cosmetics" as articles "intended to be rubbed, poured, sprinkled or sprayed on, introduced into, or otherwise applied to the human body or any part thereof for cleansing, beautifying, promoting attractiveness, or altering the appearance." 21 U.S.C. § 321(i). Because the complaint characterizes the products as both drugs and cosmetics, (*see* Dkt. No. 1, ¶¶ 66-75), and any categorization "hinges on the perceived intended use," it would be "inappropriate" to resolve the issue "at this early pleading stage." *Elkind*, 2015 WL 2344134, at * 7; 2015 U.S. Dist. LEXIS 63464, at *16. *See also United States v. Article . . . Consisting of 216 Cartoned Bottles, More or Less, Sudden Change*, 409 F.2d 734, 739 (2d Cir. 1969) ("Regardless of the actual physical effect of a product, it will be deemed a drug for purposes of the Act where the labeling and

promotional claims show intended uses that bring it within the drug definition"). In any event, as discussed below, the Court concludes that regardless of whether the products are drugs or cosmetics, Plaintiff's claims are not preempted.

### 2.    The FDCA's Preemption Provisions

The FDCA expressly preempts any state law that "relates to the regulation of a drug" or "the labeling or packaging of a cosmetic," that is "different from or in addition to, or that is otherwise not identical with, a requirement under this chapter." 21 U.S.C. §§ 379r(a), 379s(a). Corresponding FDA regulations state: "Among representations in the labeling of a drug which render such drug misbranded is a false or misleading representation with respect to another drug or a device or a food or cosmetic." 21 C.F.R. § 201.6(a), *see also* 21 C.F.R. § 701.1(a) ("Among representations in labeling of a cosmetic which render such cosmetic misbranded is a false or misleading representation with respect to another cosmetic or a food, drug, or device."). Thus, while states may not expand on the requirements in the FDCA, they may adopt regulations that are identical to the FDCA's requirements. *See* 21 U.S.C. §§ 379r(a)(2), 379s(a); *In re PepsiCo, Inc., Bottled Water Mktg. & Sales Practices Litig.*, 588 F. Supp. 2d 527, 532 (S.D.N.Y. 2008) ("[S]tate law causes of action are not preempted where they merely provide a damages remedy for claims premised on a violation of federal law that does not itself provide a private right of action, but are preempted where they impose obligations not imposed by federal law.") (citing *Riegel v. Medtronic*, 552 U.S. 312, 330 (2008) (affirming dismissal of claims that medical device violated state law notwithstanding compliance with relevant federal requirements)).

### 3.      California and Washington Statutes

The California and Washington statutes at issue in this case are identical to the provisions

of the FDCA. California law states: "Any drug or device is misbranded if its labeling is false or

misleading in any particular." Cal. Health & Safety Code § 111330; *see also* Cal. Health &

Safety Code § 111730 ("Any cosmetic is misbranded if its labeling is false or misleading in any

particular."). Washington law states: "A drug or device shall be deemed to be misbranded if its

labeling is false or misleading in any particular." Wash. Rev. Code Ann. § 69.04.450; *see also*

Wash. Rev. Code Ann. § 69.04.680 ("A cosmetic shall be deemed to be misbranded . . . if its

labeling is false or misleading in any particular."). Thus, they are not preempted. Moreover, as

Plaintiffs argue, because the FDCA does not regulate the use of efficacy claims on drug and

cosmetic labeling, their claims are not preempted. Indeed, courts have held that claims that a

defendant misrepresented the effectiveness of its product are "traditional claim[s] of consumer

misrepresentation, not an attempt to enforce the FDCA's labeling requirements." *Jovel*, 2013

WL 5437065, at *5, 2013 U.S. Dist. LEXIS 139661, at *14; *Astiana v. Hain Celestial Grp., Inc.*,

783 F.3d 753, 758 (9th Cir. 2015) (rejecting the defendant's argument that the FDCA preempted

the plaintiff's California state law causes of action "that create consumer remedies for false or

misleading cosmetics labels," including California's Sherman Act, Health & Safety Code §

111730, because the plaintiff was "not asking [the defendant] to modify or enhance any aspect of

its cosmetics labels that are required by federal law," but claimed "deception as a result of

advertising statements that contradicted the true ingredients listed on the FDA-mandated label.").

Defendant argues that "Plaintiffs' interpretation of California and Washington state laws

impermissibly expand[] on the federal standards." Dkt. No. 16-1, p. 22. Defendant, however, has

not identified how they expand on federal standards. Indeed, "[P]laintiffs' claims, if proven to be true, would simply require Defendant to truthfully state [the] efficacy [of its products] or not sell its products; such relief would not impose a state requirement that is 'different from or in addition to, or that is otherwise not identical with' that of the FDCA." *Delarosa v. Boiron, Inc.*, 818 F. Supp. 2d 1177, 1189–90 (C.D. Cal. 2011) (alternation added) (quoting 21 U.S.C. § 379r(a)(2)). Although the labeling and advertising claims at issue here "are part of the products' labeling and may touch on an area regulated by the FDA, consumer protection claims founded on their falsity are not preempted." *Jovel*, 2013 WL 5437065, at *5, 2013 U.S. Dist. LEXIS 139661, at *15; *see also Fagan v. Neutrogena Corp.*, No. 5:13-CV-01316-SVW-OP, 2014 WL 92255, at *1, 2014 U.S. Dist. LEXIS 2795, at *2 (C.D. Cal. Jan. 8, 2014) ("[I]f the language in the [products' principal display panels] is misleading, as the [complaint] alleges, then state law liability based on the product labels merely creates a damages remedy for violation of state law requirements that 'parallel, rather than add to, federal requirements,' and hence are not preempted.") (quoting *Riegel*, 552 U.S. at 330). Thus, Plaintiffs' allegations that the allegedly misleading labels and advertising violate California and Washington statutory and common law[5] plausibly give rise to claims that are not preempted. *See Goldemberg v. Johnson & Johnson Consumer Cos., Inc.*, 8 F. Supp. 3d 467, 475-76 (S.D.N.Y. 2014) (holding that like state statutory law, state common law claims regarding allegedly misleading labeling and advertising were not

---

[5] Defendant provided no legal authority or argument with respect to its conclusory assertion that Plaintiffs' state common law claims are preempted.

preempted and "[t]he same reasoning applies to the unjust enrichment and breach of express warranty claims").

### 4.     FDCA Cause of Action

Defendants also move to dismiss Plaintiff's mislabeling and misbranding claims on the basis that they are an attempt to bring a private cause of action under the FDCA and such claims are impliedly preempted. The FDCA states that "proceedings for the enforcement, or to restrain violations, of [the FDCA] shall be by and in the name of the United States." 21 U.S.C. § 337(a). Plaintiffs acknowledge that "the FDA has exclusive enforcement power over the FDCA," and assert that they are bringing their claims—not under the FDCA—but under California and Washington law. Dkt. No. 19, p. 23. The complaint, however, belies Plaintiffs' assertion. In addition to California and Washington statutory and common law claims, the complaint alleges that: "The Stem Cell Products are Misbranded Because their Labels Violate FDCA Regulations for Over-the-Counter . . . Drugs" and "FDCA Regulations for Cosmetics;" "The Stem Cell Products are Unapproved New Drugs;" and "Placing an unapproved new drug into the stream of commerce is an independent wrongful act under the FDCA." Dkt. No. 1, pp. 25-27. Therefore, to the extent the complaint alleges violations of the FDCA, because there is no federal private right of action to enforce the FDCA, those allegations are dismissed. *Buckman Co. v. Plaintiffs' Legal Comm.*, 531 U.S. 341, 349 n.4 (2001); *see also, e.g., Elkind*, 2015 WL 2344134, at *9, 2015 U.S. Dist. LEXIS 63464, at *19-20 (holding that the "Plaintiffs' Mislabeling Claims . . . do not squeak through the 'narrow gap through which a plaintiff's state-law claim must fit if it is to escape express or implied pre-emption.' These claims arise because Plaintiffs allege that the Powder and the Concealer violate the FDCA, and prosecuting that violation lies squarely within

24

the province of the FDA.") (quoting *In re Medtronic, Inc., Sprint Fidelis Leads Prods. Liab. Litig.*, 623 F.3d 1200, 1204 (8th Cir. 2010) (internal citation and quotation marks omitted)).

E.      **Primary Jurisdiction**[6]

Defendant argues that the Court should refer this matter to the FDA under the doctrine of primary jurisdiction. Dkt. No. 16-1, p. 25. Plaintiffs assert that referral to the FDA is not appropriate in this case.

The Second Circuit has explained that:

> The doctrine of primary jurisdiction is concerned with promoting proper relationships between the courts and administrative agencies charged with particular regulatory duties. The doctrine's central aim is to allocate initial decisionmaking responsibility between courts and agencies and to ensure that they do not work at cross-purposes. Whether there should be judicial forbearance hinges therefore on the authority Congress delegated to the agency in the legislative scheme. Recourse to the doctrine of primary jurisdiction is thus appropriate whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body.
>       The rationale behind the doctrine includes a concern for maintaining uniformity in the regulation of an area entrusted to a federal agency, as well as a desire for utilizing administrative expertise . . . . Overall, the doctrine seeks to produce better informed and uniform legal rulings by allowing courts to take advantage of an agency's specialized knowledge, expertise, and central position within the regulatory regime.

*Ellis v. Tribune Television Co.*, 443 F.3d 71, 81-82 (2d Cir. 2006) (quoting *Pharm. Research & Mfrs. of Am. v. Walsh*, 538 U.S. 644, 673 (2003) (Breyer, J., concurring)) (internal quotation marks and citations omitted).

_____

[6] "[T]he doctrine of primary jurisdiction is not, despite its name, jurisdictional. Indeed, it presupposes that the court . . . has jurisdiction." *Balt. & Ohio Chi. Terminal Ry. Co. v. Wis. Cent. Ltd.*, 154 F.3d 404, 411 (7th Cir. 1998) (internal citations omitted).

"Even when primary jurisdiction is not statutorily required . . . courts may still apply the doctrine as a prudential matter." *Ellis*, 443 F.3d at 82–83. Although "[n]o fixed formula exists for applying the doctrine of primary jurisdiction," *United States v. W. Pac. R. Co.*, 352 U.S. 59, 64 (1956), the Second Circuit has instructed that courts should consider four factors:

> (1) whether the question at issue is within the conventional experience of judges or whether it involves technical or policy considerations within the agency's particular field of expertise;

> (2) whether the question at issue is particularly within the agency's discretion;

> (3) whether there exists a substantial danger of inconsistent rulings; and

> (4) whether a prior application to the agency has been made.

*Ellis*, 443 F.3d at 82–83 (2d Cir. 2006) (citing *Nat'l Commc'ns Ass'n., Inc. v. AT&T Co.*, 46 F.3d 220, 222 (2d Cir. 1995)). "'[T]he court must also balance the advantages of applying the doctrine against the potential costs resulting from complications and delay in the administrative proceedings.'" *Id.* at 83 (quoting *Nat'l Commc'ns Ass'n., Inc.*, 46 F.3d at 223).

### 1.       The Nature of the FDA's Expertise

The first factor requires consideration of whether the record presents issues that are "within the conventional experience of judges" or "involve technical or policy considerations within the agency's field of expertise." *Id.* The issues in this case, namely whether Defendant's labeling and marketing of the Phyto Stem Cell+ line of products was fraudulent, false, or misleading, fall within the conventional experience of judges. *See, e.g., Goldemberg*, 8 F. Supp. 3d at 476 ("[T]he main issue Plaintiff raises in the instant case is whether the use of the term 'Active Naturals' is deceptive or misleading, a question which courts are 'eminently well suited' to entertain."); *Elkind*, 2015 WL 2344134, at * 10, 2015 U.S. Dist. LEXIS 63464, at *22 ("The

26

Court is well-equipped" to answer the question of "whether the phrase 'DNA Advantage' is misleading to a reasonable consumer in light of the Products' actual effects"); *Jovel*, 2013 WL 5437065, at *7, 2013 U.S. Dist. LEXIS 139661, at *20 ("Jovel's claim that i-Health has marketed its products in a manner that misleads consumers into believing that the products support brain development and function when the scientific evidence says otherwise is one courts are well-equipped to handle, and thus those claims are not an appropriate basis for invoking the primary jurisdiction doctrine."). Thus, the first factor weighs against applying the doctrine of primary jurisdiction.

### 2.    Scope of the FDA's Discretion

The second factor weighs in favor of referral: "the FDA may prohibit any labels that are 'misleading in any particular.'" *Elkind*, 2015 WL 2344134, at *10, 2015 U.S. Dist. LEXIS 63464, at *23; *see also Goldemberg*, 8 F. Supp. 3d at 477 (finding the second factor weighed in favor of referral because "the decision whether to define 'natural' as used in cosmetics labeling is undeniably within the FDA's discretion, as the agency is charged with ensuring product safety, and may promulgate regulations accordingly") (citing 21 U.S.C. §§ 393(b)(1)-(2), 371(a)) (internal citation omitted).

### 3.    Risk of Inconsistent Rulings

Regarding the danger of inconsistent rulings, Defendant asserts that the FDA "has addressed issues regarding skin products (e.g., sunscreen's effect on preventing skin damage) and has given consideration to the effects of using the terms 'anti-aging' or 'age defying' in connection with the labeling on cosmetics and OTC drugs." Dkt. No. 16-1, p. 29. While the 1999

FDA monograph concerning "Sunscreen Products" that Defendant refers to[7] notes comments regarding skin aging, there is no indication by either party that the FDA is considering the terms at issue in this case. Accordingly, the third factor weighs against referral. *Cf.*, *Ellis*, 443 F.3d at 87 (finding that the risk of inconsistent rulings weighed in favor of referral to the FCC because the defendant's "application for an extended waiver was still pending before the Commission at the time of the district court's decision" and thus, "there existed a substantial danger of inconsistent rulings.") (internal quotation marks omitted).

### 4.        Prior Application to the FDA

The Second Circuit has instructed that "[i]f prior application to the agency is present, this factor provides support for the conclusion that the doctrine of primary jurisdiction is appropriate. On the other hand, if prior application to the agency is absent, this factor may weigh against referral of the matter to the agency on the basis of primary jurisdiction." *Ellis*, 443 F.3d at 89 (internal citation omitted). Neither party has applied to the FDA, nor is there any indication that either party intends to do so. Accordingly, the fourth factor weighs against referral.

### 5.        Other Considerations

Finally, the Second Circuit has "noted that . . . the Supreme Court has consistently held that there are only two purposes to consider in determining whether to apply the primary jurisdiction doctrine – uniformity and expertise." *Id.* at 90 (internal quotation marks omitted). In this case, having weighed the four relevant factors, the Court concludes that while the second

---

[7] Sunscreen Drug Products For Over-The-Counter Human Use; Final Monograph, 64 Fed. Reg. 27666-01 (FDA May 21, 1999).

factor may counsel in favor of referral, the balance of the factors weigh against it, and there is no basis on which to find that the application of the doctrine of primary jurisdiction to this case would serve the purposes of uniformity and expertise.

### F.      Magnuson-Moss Warrant Act

Defendant moves to dismiss Count 1 of the complaint, which alleges a violation of the Magnuson-Moss Warranty Act ("MMWA"), 15 U.S.C. § 2301 *et seq*. Dkt. No. 1, p. 31. Defendant asserts that: (1) the MMWA claim is preempted because the "products at issue are subject to their own regulatory scheme (the FDCA);" and (2) Plaintiffs have failed to "plead an actionable warranty" within the meaning of the MMWA because it does not guarantee performance over a "specified period of time." Dkt. No. 16-1, p. 24. [8]

"The MMWA grants relief to a consumer 'who is damaged by the failure of a . . . warrantor . . . to comply with any obligation . . . under a written warranty.'" *Wilbur v. Toyota Motor Sales, U.S.A., Inc.*, 86 F.3d 23, 26 (2d Cir. 1996) (quoting 15 U.S.C. § 2310(d)(1)).

---

[8] Defendant additionally argues, in a footnote in its reply, that "the MMWA only applies to 'consumer product[s],' and asserts that "[c]osmetics, like the ones at issue in this case, are *not* consumer products." Dkt. No. 23, p. 7 n.3 (emphasis in original). Courts have defined "consumer products" differently. *See, e.g.*, *Forcellati v. Hyland's, Inc.*, 876 F. Supp. 2d 1155, 1166 (C.D. Cal. 2012) (discussing varying definitions of "consumer products") (citing, *inter alia*, *Kanter v. Warner–Lambert Co.*, 99 Cal.App.4th 780, 798, 122 Cal.Rptr.2d 72 (2002), *Kemp v. Pfizer, Inc.*, 835 F. Supp. 1015, 1024 (E.D. Mich.1993)). As Defendant raised this argument for the first time in its reply, however, and Plaintiff has had no opportunity to respond the Court declines to address this argument here.

Defendant argues Plaintiffs' MMWA claim fails because the labeling of the products at issue is regulated by the FDCA and the MMWA does not apply to warranties governed by federal law. Dkt. No. 16-1, p. 24. Under § 2311(d), the MMWA is "inapplicable to any written warranty the making or content of which is otherwise governed by Federal Law." 15 U.S.C. § 2311(d). This provision further provides that: "If only a portion of a written warranty is so governed by Federal law, the remaining portion shall be subject to this chapter." *Id*.

The majority of courts that have considered whether § 2311(d) bars an MMWA claim founded on the labels of products governed by the FDCA have concluded that the MMWA claim is barred. *See Jasper v. MusclePharm Corp.*, No. 14-CV-02881-CMA-MJW, 2015 WL 2375945, at *5-6, 2015 U.S. Dist. LEXIS 64588, at *13  (D. Colo. April 9, 2015) (finding that because dietary supplement product labels containing allegedly misleading claims about the supplement's attributes or effects were governed by the FDCA, § 2311(d) barred the plaintiff's MMWA claim), *recommendation adopted*, 2015 WL 2375945, 2015 U.S. Dist. LEXIS 64589 (D. Colo. May 15, 2015). *See also Clancy v. The Bromley Tea Co.*, 308 F.R.D. 564, 577 (N.D. Cal. 2013); *Viggiano v. Hansen Natural Corp.*, 944 F. Supp. 2d 877, 897 (C.D. Cal. 2013); *Bates v. General Nutrition Ctrs., Inc.*, 897 F. Supp. 2d 1000, 1002 (C.D. Cal. 2012); *Stewart v. Smart Balance, Inc.*, No. 11-6174 (JLL), 2012 WL 4168584, at *14, 2012 U.S. Dist. LEXIS 138454, at *42 (D.N.J. June 26, 2012); *Hairston v. South Beach Beverage Co.*, No. CV 12-14290JFW (DTBx), 2012 WL 1893818, at *5, 2012 U.S. Dist. LEXIS 74279, at *17 (C.D. Cal. May 18, 2012); *Kanter v. Warner–Lambert Co.*, 99 Cal.App. 4th 780, 797 (2002), *c.f. Kanfer v. Pharmacare US, Inc.*, No. 15-CV-0120-H-JLB, 2015 WL 6742201, at *10, 2015 U.S. Dist. LEXIS 150105, at *25 (S.D. Cal. Nov. 4, 2015) (denying the defendant's motion to dismiss, explaining that the issue of

30

"[w]hether § 2311(d) precludes Plaintiff's MMWA claim is better suited for a motion for summary judgment, when the record is more fully developed and the parties further analyze the statutory scheme under the facts of the case").

Although Plaintiffs maintain that the FDCA does not bar a claim under the MMWA, they have not addressed § 2311(d); rather, they assert that Defendant's argument is based on a "misguided" interpretation of *Bates*, 897 F. Supp. 2d 1000. Dkt. No. 23 n.10. In *Bates*, the court dismissed the plaintiff's MMWA claim on the ground that the FDCA governed the labeling of the dietary supplements at issue. *Id*. at 1002. Plaintiffs argue that the reasoning in *Bates* is inapplicable because there the alleged misleading conduct involved "whether certain ingredients needed to be listed separately under the FDCA," while here, the alleged misleading conduct concerns Defendant's representations about the efficacy of the Phyto Stem Cell+ products. Dkt. No. 19, p. 23 n.10. The MMWA, however, by its terms, is "inapplicable to *any written warranty* the making or content of which is otherwise governed by Federal Law." 15 U.S.C. § 2311(d); *see Jasper*, 2015 WL 2375945, at *6, 2015 U.S. Dist. LEXIS 64588 at *14-15 (rejecting the same argument, noting that "it is not obvious why [a] distinction [between ingredient and efficacy claims] should make a difference under §2311(d)").

Notwithstanding the above, while any claims regarding warranties on the label are barred on the basis that they are governed by the FDCA, because the complaint alleges that Defendant has made warranties on its website, and the parties have not addressed whether there are portions of the warranties at issue in this case—like those on Defendant's website—that are not governed by the FDCA (and thus permitted under the MMWA) the Court declines to dismiss the MMWA claim at this juncture. *Kanfer*, 2015 WL 6742201, at *10, 2015 U.S. Dist. LEXIS 150105, at *25.

With respect to Defendant's second argument: that Plaintiff has failed to "plead an actionable warranty," the Court concludes that the complaint plausibly alleges a warranty within the meaning of the MMWA. The MMWA defines written warranty as:

> any written affirmation of fact or written promise made in connection with the sale of a consumer product by a supplier to a buyer which relates to the nature of the material or workmanship and affirms or promises that such material or workmanship is defect free or will meet a specified level of performance *over a specified period of time*.

15 U.S.C. § 2301(6)(A) (emphasis added). Here, the complaint alleges that Defendant issued "marketing materials" claiming, *inter alia*, "improvement of the skin's firmness," "hydration," "elasticity," and "overall appearance of the eye area," with use of the Phyto Stem Cell+ cream, serum, gel-cream, eye contour cream, and contains pictures purporting to show a 26 to 97 percent improvement with "[r]esults after 28 days." Dkt. No. 1, ¶ 27, pp. 9-11. "[C]ourts have found promises are written warranties under the MMWA only if the promise clearly states the specific time period over which the promised performance is to occur." *In re Scotts EZ Seed Litig.*, No. 12 CV 4727 VB, 2013 WL 2303727, at *4, 2013 U.S. Dist. LEXIS 73808, at *13 (S.D.N.Y. May 22, 2013) (*comparing Hairston v. S. Beach Beverage Co., Inc.*, CV 12-1429-JFW (DTBx), 2012 WL 1893818, at *6, 2012 U.S. Dist. LEXIS 74279, at *19 (C.D.Cal. May 18, 2012) (even if representations that beverage was "all natural with vitamins" and had a particular flavor "could somehow be construed as promises or guarantees, they clearly do not 'specify a level of performance over a specified period of time'"); *Kelley v. Microsoft Corp.*, No. C07-0475MJP, 2007 WL 2600841, at *5, 2007 U.S. Dist. LEXIS 66721, at *13 (W.D. Wa. Sept. 10, 2007) (representation that computer was "Windows Vista Capable" not written warranty because promise contained no temporal element); *with Kelleher v. Marvin Lumber & Cedar Co.*,

32

891 A.2d 477, 503–04 (N.H. 2005) (promise that "all exterior wood [in the windows] is deep treated in a dry vac process with a pesticide and water repellant solution to permanently protect against rot and decay" constitutes written warranty under MMWA because promised performance is "permanent")). In view of the allegations in the complaint concerning Defendant's representations regarding improvement of skin "after 28 days," the Court finds Plaintiffs have plausibly alleged a claim that Defendant issued a written warranty promising results within a 28-day time period, thus satisfying the MMWA's temporal element. Accordingly, Defendant's motion to dismiss Plaintiff's MMWA claim is denied.

### G.     Failure to Plead with Particularity

Defendant argues that Plaintiffs' consumer fraud claims, Counts 5-8 of the complaint, which allege violations of California and Washington statutory law, must be dismissed because the complaint fails to plead fraud with "particularity." Fed. R. Civ. P. 9(b) ("In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake."). Specifically, Defendant contends that the complaint does not allege "exactly what each Plaintiff purportedly relied on [when purchasing Defendant's eye contour cream,] when they relied on it, and how they were allegedly damaged by it." Dkt. No. 16-1, p. 31. Rule 9(b) "requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *Fin. Guar. Ins. Co. v. Putnam Advisory Co., LLC*, 783 F.3d 395, 403 (2d Cir. 2015). One of the principal goals of Rule 9(b) is to provide "a defendant fair notice of plaintiff's claim, to enable preparation of defense." *DiVittorio v. Equidyne Extractive Indus.*, Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

Defendant argues that the complaint fails to meet the particularity requirements of Rule 9(b) because it "lacks particularized allegations regarding exactly what each Plaintiff purportedly relied on, when they relied on it, and how they were allegedly damaged by it." Dkt. No. 16-1, p. 31. Plaintiffs respond that their allegations are sufficient because: they identify who participated in the deceptive practice (Defendant) and who Defendant mislead (Plaintiffs); they identify what products are at issue as well as the "core misrepresentation of Defendants' marketing, including . . . claims that the Stem Cell Products were . . . proven to provide consumers with dramatic anti-aging results and could 'repair DNA' or 'reverse the signs of aging,' . . . increase or stimulate collagen, extend skin cell longevity, and reduce the number of wrinkles." Dkt. No. 19, p. 31.

Here, Plaintiffs allege that the eye contour cream was "worthless," but do not allege that they used it or how they used it. Nor do they allege the manner in which the eye contour cream failed: whether, for example, they did not see a reversal of the signs of aging or a reduction in wrinkles. Further, the complaint alleges that Plaintiffs "purchased the Stem Cell Products in reliance on Defendants' misrepresentations, including those found on the product labeling and/or in various advertisements and promotion materials as described herein." Dkt. No. 1, ¶¶ 7, 8. Plaintiffs do not, however, identify which of the numerous alleged misrepresentations they relied on when purchasing the eye contour cream. Indeed, Plaintiffs do not allege that they read the labels before purchasing the product or that they viewed Defendant's website at any point. *See*, *e.g.*, *DiMuro*, 572 F. App'x at 31 (finding that the complaint lacked particularity because, *inter alia*, "we do not know: (1) if Plaintiffs used the products they purchased; (2) if Plaintiffs used the products as directed; (3) what specific benefits Plaintiffs expected to receive from the products based on false advertising claims and; (4) what benefits Plaintiffs hoped for but did not

receive."). Accordingly, Defendant's motion to dismiss Counts 5 through 8 for lack of particularity is granted.

## IV.    CONCLUSION

For these reasons, it is

**ORDERED** that Count 9 of the complaint (Dkt. No. 1) is **DISMISSED** and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 16) is **GRANTED with respect to Counts 5-8 of the complaint** (Dkt. No. 1); and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 16) is **GRANTED** with respect to Plaintiff's claims for prospective injunctive relief; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 16) is **GRANTED** with respect to any claims for relief under the FDCA; and it is further

**ORDERED** that Counts 5-8, Plaintiffs' claims for prospective injunctive relief, and any claims for relief under the FDCA are **DISMISSED**; and it is further

**ORDERED** that Defendant's motion to dismiss (Dkt. No. 16) is otherwise **DENIED**.

**IT IS SO ORDERED.**

Dated:  January 15, 2016

Brenda K. Sannes
U.S. District Judge